IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2009-NMSC-032

Filing Date:  June 17, 2009

Docket No. 30,640

LESLIE A. DEWITT,

        Worker-Petitioner,

v.

RENT-A-CENTER, INC. and
FIDELITY & GUARANTY INSURANCE,

        Employer-Insurer-Respondents.

ORIGINAL PROCEEDING ON CERTIORARI
Helen L. Stirling, Workers' Compensation Judge

Gerald A. Hanrahan
Albuquerque, NM

for Petitioner

Hatch, Allen & Shepherd, P.A.
Aaron Randall Kugler
Albuquerque, NM

for Respondents

OPINION

DANIELS, Justice.

{1}     Worker, Leslie DeWitt, was injured during the course of her employment with Employer, Rent-A-Center, Inc.  She has appealed the decision of the Workers' Compensation Judge (WCJ) denying her claim for disability benefits.  We hold that the WCJ erred in refusing to admit testimony of Worker's medical experts concerning observations made and treatment rendered before the experts were duly designated as her authorized health care providers (HCPs).  We therefore remand to the WCJ to allow the omitted testimony to be considered.

1

## I.  BACKGROUND

**{2}**     After a motor vehicle accident in 1997 when she was seventeen years old, Worker was diagnosed with grade III spondylolisthesis, a condition in which one vertebra in the spine slips forward on the vertebra below it and comes out of alignment with the other spinal vertebrae.  During the years between her 1997 diagnosis and February 25, 2004, Worker had seen at least four different doctors for recurring back pain, in addition to experiencing an assortment of other health issues and surgeries.  She was hired by Employer to work as a sales manager in December 2003.  On February 25, 2004, Worker was injured during the course of her employment when she reached out to keep a table from falling and experienced back pain.

**{3}**     After the February 2004 accident, Worker reported her injury and received treatment from Employer's preferred HCP, Concentra.  On March 17, 2004, Worker was released by Concentra to regular duty with no restrictions, after reporting to the doctor that she did not have pain and that her symptoms had resolved.  In July 2004, Worker sought emergency medical treatment, complaining of nausea and severe low back pain.  Shortly afterward, she asked Employer for authorization for more medical care.  Although Employer's insurer told Employer to send her back to Concentra, that message apparently was not conveyed to Worker by Employer.  Worker testified that her supervisor told her to call Employer's Risk Management Office through a 1-800 number on a poster on the wall, but the person answering the phone advised her that her case was closed.  Worker then gave notice of her resignation.

**{4}**     Over the next several months, Worker sought treatment on her own from several medical providers, including three doctors and a hospital emergency room.  In December 2004, Worker consulted Dr. Whalen, at the suggestion of her mother.  Dr. Whalen gave Worker some injections and referred her to Dr. Gelinas for a surgical consultation.  In January 2005, Dr. Gelinas performed an "L4-S1 fusion reduction of spondylolisthesis" on Worker.  After the surgery, Worker continued to seek treatment from Drs. Whalen and Gelinas, sought emergency room treatment on more than one occasion, and continued to receive injections from Dr. Whalen.  The last radiographs from Dr. Gelinas on March 20, 2005, showed that her spondylolisthesis had been surgically reduced and was stable, the bone mass was excellent with no evidence of nonunion, the hardware had not failed, and she had a functionally solid fusion.  During her consultations with and treatment by Drs. Whalen and Gelinas, she had not told them that she thought her work-related accident in February 2004 was the cause of any of her continuing problems, although she had mentioned the accident as part of her historical "string of problems, starting with the motor vehicle accident in her teens and her diagnosis then."  Because Worker did not inform either Dr. Whalen or Dr. Gelinas that she believed her need for treatment was associated with a work-related injury, neither doctor set up her chart as a workers' compensation case nor billed Employer's insurer for their services.

2

**{5}**     In July 2005, seven months after her surgery, Worker filed a workers' compensation complaint against Employer to seek temporary total and permanent partial disability benefits, medical benefits and attorney fees.  In her complaint, she also gave notice to Employer that she was exercising her right under the Workers' Compensation Act (the Act), NMSA 1978, Section 52-1-49(C) (1990), to designate her own choice of HCP in place of the employer-designated HCP, Concentra, naming Drs. Whalen and Gelinas.  Employer did not give notice of any objection to the change, and the WCJ found that Drs. Whalen and Gelinas became Worker's authorized HCPs as of July 18, 2005, three days after giving notice to Employer, in accordance with the requirements of Section 52-1-49(D).  Those two doctors continued to treat Worker for her injuries for some time after they became Worker's authorized HCPs.  Dr. Gelinas continued to treat Worker through August 2005 and Dr. Whalen continued treatment through January 2006.

**{6}**     Before trial, Dr. Diskant was chosen by the parties to conduct an independent medical evaluation (IME) of Worker.  After reviewing all of Worker's medical records, radiographs, and performing a physical examination, Dr. Diskant concluded that her need for surgery, while reasonable and necessary for her condition, "was not caused by her accident of February 25, 2004, while working for Employer."

**{7}**     At the October 2006 trial before the WCJ, the testimony of the medical experts was presented, as required by the New Mexico Administrative Code, through their pretrial depositions.  *See* 11.4.4.12(G)(4) NMAC (6/13/03) (providing deposition testimony of authorized HCPs shall be admissible, in lieu of live testimony); 11.4.4.12(F)(1) (stating "[l]ive medical testimony shall not be permitted, except by court order"); *see also Banks v. IMC Kalium Carlsbad Potash Co.*, 2003-NMSC-026, ¶ 28, 134 N.M. 421, 77 P.3d 1014 (confirming that the NMAC requires use of depositions in lieu of live testimony).

**{8}**     Worker offered into evidence the depositions of Drs. Whalen and Gelinas containing their testimony about their diagnoses and treatments of Worker, and their expert opinions that her medical condition had changed as a result of her February 2004 work-related injury.  The WCJ excluded Worker's HCP testimony on the legal theory that the opinions were inadmissible because they were based on treatment rendered by those doctors before July 18, 2005, the date when they became Worker's authorized HCPs.  The WCJ relied on a combination of two provisions of the Act, Section 52-1-49(C), which provides that a worker must give notice of a proposed new HCP "at least ten days before treatment from that health care provider begins," and NMSA 1978, Section 52-1-51(C) (1990, as amended through 2005), which provides that "[o]nly a health care provider who has treated the worker pursuant to Section 52-l-49 NMSA 1978 or the health care provider providing the independent medical examination pursuant to this section may offer testimony at any workers' compensation hearing concerning the particular injury in question."

**{9}**     The WCJ also rejected Worker's arguments that she was effectively abandoned by Employer's HCP with respect to her continuing health care and that she was therefore entitled to choose her own health care provider without notification to Employer.

3

**{10}** The WCJ relied substantially on the deposition testimony of Dr. Diskant to find that Worker's condition after March 17, 2004, "was not caused by or necessitated by her accident and temporary injury of February 25, 2004." The WCJ therefore concluded that Worker was not entitled to disability benefits or attorney's fees and that Employer and its insurer were not responsible for payment of any medical bills after March 17, 2004, when her condition was found to be "resolved to her pre-accident condition of chronicity."

**{11}** The Court of Appeals, in a memorandum opinion, affirmed the decision of the WCJ in its entirety. *DeWitt v. Rent-A-Center, Inc.*, No. 27,596, slip op. (N.M. Ct. App. Aug. 21, 2007). The case comes before us on Worker's petition for writ of certiorari.

## II.      STANDARD OF REVIEW

### A.      Review of WCJ's Factual Determinations

**{12}** We review factual findings of Workers' Compensation Administration judges under a whole record standard of review. *Moya v. City of Albuquerque*, 2008-NMSC-004, ¶ 6, 143 N.M. 258, 175 P.3d 926. "On appeal, to determine whether a challenged finding is supported by substantial evidence, we have always given deference to the fact finder, even when we apply, as here, whole record review." *Herman v. Miners' Hosp.*, 111 N.M. 550, 552, 807 P.2d 734, 736 (1991). We view the evidence in the light most favorable to the decision, "but may not view favorable evidence with total disregard to contravening evidence." *Id.* (internal quotation marks and ). Substantial evidence on the record as a whole is evidence demonstrating the reasonableness of an agency's decision, *id.*, and we neither reweigh the evidence nor replace the fact finder's conclusions with our own. *Id.* at 553, 807 P.2d at 737; *see Register v. Roberson Const. Co., Inc.*, 106 N.M. 243, 245, 741 P.2d 1364, 1367 (1987) ("Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

> To determine whether a finding of fact is amply supported by the whole record, we do not rely solely on one part of the evidence if to do so would be unreasonable. We must find evidence that is credible in light of the whole record and that is sufficient for a reasonable mind to accept as adequate to support the conclusion reached by the agency.

*Herman*, 111 N.M. at 552, 807 P.2d at 736 (internal quotation marks and citation omitted).

### B.      Review of WCJ's Evidentiary Rulings

**{13}** With respect to the admission or exclusion of evidence, we generally apply an abuse of discretion standard where the application of an evidentiary rule involves an exercise of discretion or judgment, but we apply a de novo standard to review any interpretations of law underlying the evidentiary ruling. *See State v. Martinez*, 2008-NMSC-060, ¶ 10, 145 N.M. 220, 195 P.3d 1232 ("A misapprehension of the law upon which a court bases an otherwise

4

discretionary evidentiary ruling is subject to de novo review.").

## C.    Review of WCJ's Statutory Interpretations

**{14}**    In reviewing a WCJ's interpretation of statutory requirements, we apply a de novo standard of review. *See Grine v. Peabody Natural Res.*, 2006-NMSC-031, ¶ 17, 140 N.M. 30, 139 P.3d 190; *Howell v. Marto Elec.*, 2006-NMCA-154, ¶ 16, 140 N.M. 737, 148 P.3d 823. "We look first to the plain meaning of the statute's words, and we construe the provisions of the Act together to produce a harmonious whole. After we determine the meaning of the statutes, we review the whole record to determine whether the WCJ's findings and award are supported by substantial evidence." *Grine*, 2006-NMSC-031, ¶ 17 (internal quotation marks and citation omitted).

## III.    DISCUSSION

**{15}**    The selection of a qualified HCP is an important component of the Act. It has consequences under Section 52-1-49(D) regarding responsibility of an employer for payment of medical expenses, and it has consequences under Section 52-1-51(C) regarding which providers may present medical testimony at any hearings before the WCJ.

**{16}**    Under Section 52-1-49(A), an employer is responsible for paying for "reasonable and necessary health care services" from the HCP. Section 52-1-49(B) of the Act provides that, after a worker has incurred an injury under the Act, "[t]he employer shall initially either select the health care provider for the injured worker or permit the injured worker to make the selection." In cases where the employer has exercised its statutory right to make the initial HCP selection, as occurred in this case with Employer's designation of Concentra, that selection is required to remain in effect during the first sixty days of treatment. *Id.* After the initial sixty-day period, the worker may request designation of another HCP by giving notice to the employer in compliance with Section 52-1-49(C), which states:

> After the expiration of the initial sixty-day period set forth in Subsection B of this section, the party who did not make the initial selection may select a health care provider of his choice. Unless the worker and employer otherwise agree, the party seeking such a change shall file a notice of the name and address of his choice of health care provider with the other party at least ten days before treatment from that health care provider begins.

**{17}**    In order to prevent such a change in HCP, an employer must file a written objection with the WCJ. *See* § 52-1-49(D). On receipt of an objection, the WCJ will rule on the requested change, based on a determination of whether the care being provided by the old HCP is reasonable. *See* § 52-1-49(F). If an employer does not file an objection to a worker's HCP selection within the three-day period, the HCP change becomes effective and the employer shall be found "liable for the cost of treatment provided by the worker's health care provider until the employer does file his objection and the workers' compensation judge

5

has rendered his decision." § 52-1-49(D).

**{18}** In addition to affecting an employer's responsibility for payment of expenses of treatment by an authorized HCP, compliance with the Act's designation provisions has an effect on who may testify, pursuant to Section 52-1-51(C): "Only a health care provider who has treated the worker pursuant to Section 52-l-49 NMSA l978 or the health care provider providing the independent medical examination pursuant to this section may offer testimony at any workers' compensation hearing concerning the particular injury in question."

**{19}** In this case, the WCJ refused to admit any testimony of Drs. Whalen and Gelinas concerning their treatment of Worker before they became authorized HCPs or their medical opinions that the accident aggravated her preexisting medical condition, and relied instead on the contrary testimony of Dr. Diskant. Worker challenges those rulings on two separate theories, (1) that Worker was authorized to select her own HCPs outside the Act because Employer had abandoned her treatment, and (2) that once the doctors became her HCPs, they were authorized to provide testimony about all of Worker's relevant medical history. We address both arguments.

**A.      Whether Employer Failed to Provide Continuing Treatment and Justified Worker's Unilaterally Selecting HCPs Outside the Act**

**{20}** We first address Worker's argument that Employer failed to fulfill its statutory duty to provide health care services after Worker requested additional treatment on July 16, 2004, and that she was thereby entitled to select her own HCPs without complying with the advance notice and dispute resolution provisions of Section 52-1-49 of the Act.

**{21}** An employer is required to provide a worker with reasonable and necessary health care services in a timely manner after sustaining a work-related injury. *See* § 52-1-49(A); *Grine*, 2006-NMSC-031, ¶ 24 ("If Employer had notice of the accident, it was required to 'provide the worker in a timely manner reasonable and necessary health care services from a health care provider.'" (quoting § 52-1-49(A))). Worker asserts, however, that Employer failed in its duty to provide medical care when Employer improperly advised her that her case was closed and suggested she should seek treatment by other means. As a result of this abandonment, Worker argues, she was entitled to choose her own HCPs because she was not provided care and was advised to seek other treatment.

**{22}** The WCJ considered and rejected Worker's claims of abandonment in detailed findings of fact. We review the WCJ's findings by determining whether substantial evidence supports them. Because weighing evidence and making credibility determinations are uniquely within the province of the trier of fact, we will not reweigh the evidence nor substitute our judgment for that of the WCJ, unless substantial evidence does not support the findings. *See Gallegos v. City of Albuquerque*, 115 N.M. 461, 464, 853 P.2d 163, 166 (Ct. App. 1993) (observing that it is for the WCJ, not the appellate court, to weigh the evidence and make findings of fact); *Marez v. Kerr-McGee Nuclear Corp.*, 93 N.M. 9, 11, 595 P.2d

6

1204, 1206 (Ct. App. 1978) (stating that in workers' compensation cases "[w]e will not weigh the evidence or determine the credibility of witnesses. The trier of facts is the sole judge of the credibility of witnesses and the weight to be given their testimony." (citation omitted)). We will not disturb the decision if a reasonable mind would accept the evidence as adequate to support the decision. *See Herman*, 111 N.M. at 552, 807 P.2d at 736.

**{23}** The evidence supports the WCJ's resolution of factual issues in a textbook case of weighing witness credibility and drawing reasonable factual inferences. Worker testified that her store manager told her to call Concentra, Employer's HCP, on July 16, 2004, after she claimed to be experiencing a recurrence of back pain that she felt was related to the February 25 accident. According to Worker, she called Concentra and was told she could not receive treatment. She testified that she was then directed to call Employer's risk management office at a 1-800 number that was posted on the wall. Although she could not remember what number she called nor to whom she spoke, she was reportedly told by someone she would need to seek medical treatment by other means because she had been released by her doctor and her case had been closed.

**{24}** Employer presented contrary evidence that there was no such risk management number posted on the wall. Additionally, Employer's insurance claims adjuster, Sherri Stoner, testified that she spoke with Worker on more than one occasion and sent correspondence to her that contained her contact information and also included a description of the workers' compensation process. Stoner further testified that the information she sent encouraged Worker to call her if she had any questions regarding her claim. Worker denied receiving Stoner's correspondence, although it was mailed to the same address given by Worker in her deposition. The WCJ specifically found from the testimony that Worker had her local adjuster's contact information and had previously contacted her both by letter and phone.

**{25}** While the evidence presented might have supported contrary findings in this factual controversy, the record contains sufficient evidence to sustain the WCJ's decision. *See Easterling v. Woodward Lumber Co.*, 112 N.M. 32, 37, 810 P.2d 1252, 1257 (Ct. App. 1991) ("In making a whole record review, it is not a function of this court to reweigh the evidence. The judge could give such weight as he deemed appropriate to the testimony of worker and his witnesses."). The WCJ entered detailed findings of fact and conclusions of law, and while there was contrary evidence in the record, the evidence reasonably supports the WCJ's credibility determinations and holding. *See Tom Growney Equip. Co. v. Jouett*, 2005-NMSC-015, ¶ 13, 137 N.M. 497, 113 P.3d 320 ("'Where the testimony is conflicting, the issue on appeal is not whether there is evidence to support a contrary result, but rather whether the evidence supports the findings of the trier of fact.'" (citation omitted)). We hold there is substantial evidence to support the WCJ's finding that Worker had the requisite information to contact her claims adjuster, but did not, and that Employer therefore did not fail to provide Worker with reasonable and necessary health care services. We affirm the WCJ's conclusion that Drs. Whalen and Gelinas did not become authorized HCPs until July 18, 2005, after Worker finally complied with the notice provisions of Section 52-1-49. We

7

therefore do not need to determine the effect of an employer's failure to provide health care on a worker's obligations to comply with the HCP selection provisions of the Act.

**B.      Admissibility of Medical Expert Testimony of Worker's HCPs Regarding Treatments Rendered Before They Became Authorized HCPs**

{26}      We now address Worker's argument that once her doctors became treating HCPs under the Act, they not only could testify at a hearing, they could testify about the entirety of Worker's relevant medical history, including treatment they had provided and observations they had made before they were lawfully designated as Worker's treating HCPs.

{27}      Resolution of this issue requires us to interpret Section 52-1-51(C) of the Act, which provides:

> Only a health care provider who has treated the worker pursuant to Section 52-l-49 NMSA l978 or the health care provider providing the independent medical examination pursuant to this section may offer testimony at any workers' compensation hearing concerning the particular injury in question.

{28}      The WCJ concluded that this statutory provision precluded testimony of Worker's authorized HCPs regarding treatment they provided before they became HCPs. Our review of that conclusion presents a pure matter of statutory interpretation, because the predicate facts are established. It is undisputed that Employer selected the initial HCP, Concentra, in February 2004, and that Worker did not give statutory notice of a requested change in HCP until July 15, 2005, some six months after beginning her consultation and treatment with Drs. Whalen and Gelinas. It is also undisputed that Employer did not object to the HCP change, and neither party challenges the WCJ's conclusion that Drs. Whalen and Gelinas became Worker's authorized HCPs as of July 18, 2005, over a year before the October 11, 2006, trial. Although Drs. Whalen and Gelinas each provided some treatment after they became HCPs, the most important testimony they could offer related to Worker's medical history before they became HCPs, including their observations and treatments. The question before us is whether the Act limits the scope of the testimony of qualified HCP witnesses to matters they personally participated in during the time they were authorized HCPs.

{29}      The first and most obvious guide to statutory interpretation is the wording of the statutes themselves. *See State v. Davis*, 2003-NMSC-022, ¶ 6, 134 N.M. 172, 74 P.3d 1064 (providing that where a statute has a plain meaning, it is "to be given effect as written without room for construction"). On its face, Section 52-1-51(C) specifies which medical experts are permitted to testify. Drs. Whalen and Gelinas, as duly designated HCPs who had "treated the worker pursuant to Section 52-l-49 NMSA l978," were authorized to "offer testimony at any workers' compensation hearing concerning the particular injury in question" by the express terms of Section 52-1-51(C). The Act simply says that authorized HCPs may testify. There is nothing in the plain language of Section 52-1-51(C) or any other

8

part of the Act that textually limits the scope of admissible testimony to events that occurred during the time a doctor was an authorized HCP. Normally, that should end the inquiry. However, to the extent that the language could be considered ambiguous, we can consider principles of statutory construction that are employed with statutes that are unclear. In doing so, we must attempt to construe a statute "according to its obvious spirit or reason." *State ex rel. Helman v. Gallegos*, 117 N.M. 346, 348, 871 P.2d 1352, 1354 (1994).

**{30}** One guide to finding legislative intent is to "strive to read related statutes in harmony so as to give effect to all provisions." *N.M. Indus. Energy Consumers v. PRC*, 2007-NMSC-053, ¶ 20, 142 N.M. 533, 168 P.3d 105. The only two apparently related statutory provisions are the remaining parts of Section 52-1-51, particularly subsections (A) and (D), and Section 52-l-49, which is specifically referenced in Section 52-1-51(C) itself.

**{31}** Section 52-1-51(D) provides: "If, pursuant to Subsection C of Section 52-l-49 NMSA l978, either party selects a new health care provider, the other party shall be entitled to periodic examinations of the worker by the health care provider the worker previously selected." If the Act did not allow a provider to testify about treatment that may have occurred at a time when that provider was not acting any longer as a treating HCP, then this provision to permit examinations by the previously selected HCP would result in an absurdity: The previously selected HCP who is no longer providing treatment, but who is authorized to continue conducting examinations would not be able to offer any expert testimony about the need for or propriety of any of the treatment rendered by the new HCP. Of what value would the examination be if the formerly selected HCP could not testify about any opinions regarding what happened to the worker after a new HCP was selected? Similarly, Employer's construction would preclude the ability of an HCP, who had treated a worker before the relevant work-related injury, from testifying about the worker's complete medical history. This would inhibit a full analysis of the causation issues that may be so critically important in these cases. In effectuating the intent of the Legislature, we must avoid any interpretations that would lead to absurd or unreasonable results. *Chavez v. Mountain States Constructors*, 1996-NMSC-070, ¶ 24, 122 N.M. 579, 929 P.2d 971; *see also W. Investors Life Ins. Co. v. N. M. Life Ins. Guar. Ass'n (In re Rehab. of W. Investors Life Ins. Co.)*, 100 N.M. 370, 373, 671 P.2d 31, 34 (1983) ("Statutes must be construed so that no part of the statute is rendered surplusage or superfluous.").

**{32}** A central factual issue in this case was whether Worker's medical condition resulted from a work-related injury or a pre-existing condition. It is unlikely that any of the medical experts could testify on that subject without an examination of the entire history of the patient, including the diagnostic and treatment history that predated any designation of an HCP in this case. In fact, the doctor performing the IME, who may be designated by the WCJ only after a conflict between the parties' respective HCPs, provides no treatment whatever and necessarily bases his or her testimony on treatments provided and diagnoses made by others, both HCPs and non-HCPs, during the relevant history. *See* § 52-1-51(A) ("In the event of a dispute between the parties concerning . . . the cause of an injury or any other medical issue, . . . either party may petition a workers' compensation judge for

9

permission to have the worker undergo an independent medical examination.").

**{33}** The propriety of a testifying medical expert's reliance on treatments and records other than those resulting from his or her own HCP activities was specifically approved in *Lopez v. City of Albuquerque*, 118 N.M. 682, 884 P.2d 838 (Ct. App. 1994). *Lopez* affirmed a WCJ ruling that permitted an authorized HCP to base his medical opinion testimony on otherwise inadmissible records from a non-HCP doctor. *Id.* at 682, 884 P.2d at 838. After sustaining an injury at work and being treated and released by his employer's authorized HCP, a worker later sought treatment by another doctor, who never became an authorized HCP. *Id.* at 682-83, 884 P.2d at 838-39. The employer's HCP in *Lopez*, the same Dr. Gelinas who sought to testify as Worker's HCP in this case, reviewed the records of the non-HCP doctor and relied on them heavily in arriving at his own opinions, which supported the worker's position. *Id.* at 683, 884 P.2d at 839. The employer objected to introduction of Dr. Gelinas's deposition testimony concerning the treatment of the worker by a non-HCP doctor and introduction of the supporting non-HCP's medical records on the ground that nothing generated by a non-HCP's treatment could be considered in a hearing under the Act. *Id.* The Court of Appeals upheld the WCJ's determination that the testimony and records were properly admitted as a part of the basis for the expert testimony of the statutorily-qualified HCP under Rule 11-703 NMRA. *Id.* at 684, 884 P.2d at 840. We agree with the reasoning of *Lopez*, including its observation that its "holding does not contravene the rule that only authorized health care providers may give evidence." *Id.*

**{34}** We also find guidance in the provisions of Section 52-l-49, which not only spell out in subsections (B)-(F) the procedures for notice and selection of HCPs, but also unambiguously specify in subsections (D) and (G) that employers are liable for payment of health care expenses only if they are incurred at a time when the health care provider was the statutorily authorized HCP, after the required ten-day notice of HCP selection. The Legislature obviously knew how to spell out those specific health care payment consequences of late compliance with the HCP designation provisions of the Act, as contrasted with the lack of any corresponding provision imposing a limitation on the scope of testimony of authorized HCPs.

**{35}** We are sensitive to the obvious intent of the Legislature to avoid testimony-shopping and "to limit the use and number of experts in workers' compensation cases." *Grine*, 2006-NMSC-031, ¶ 19. That goal is accomplished, however, by use of the limited ability of the parties to name new authorized treating HCPs through the notice, objection, and WCJ approval requirements set forth by the Legislature in Section 52-l-49. If Employer had been concerned that an approved designation of Worker's HCPs, and consequential entitlement to offer their testimony in this case, would have been inappropriate in any way, the Legislature provided an avenue for objection and resolution of the issue by the WCJ. An objection by Employer did not occur in this case, and Worker's doctors were therefore HCPs who were authorized to provide testimony on the issues in the case. While it certainly would have been desirable for Worker not to have made such a belated designation of her treating physicians as HCPs, and while she certainly ran the risk of their not being designated as such

10

by the WCJ, we find no authority in the Act for a truncation of their authorized testimony.

**{36}** In *Grine*, we noted that the Act limits testimony at the compensation hearing to a treating physician or a HCP who has provided an independent medical examination pursuant to the Act. 2006-NMSC-031, ¶ 19. Our reading of the record in this case indicates that Worker's HCPs had provided treatment after their official designations, and our holding is premised in part on that understanding. This case is therefore unlike *Grine*, in which we excluded the testimony of a doctor who never treated the worker at all and who was retained by the employer simply to review the case and offer expert testimony, meeting with the worker for an evaluation on only one occasion for a total of just ten minutes. *Id.* at ¶ 25. Our opinion explained why that reviewing doctor could not be considered a treating physician under the Act: "We reiterate that '[t]he expertise of a treating physician is the training, experience and familiarity with the patient whom he or she is treating. The "expert" testimony required by Section 52-1-28(B) refers to testimony based on this training, experience and familiarity.'" *Id.* (citation omitted).

**{37}** Because we have determined that the testimony of Worker's HCPs should not have been categorically excluded, we reverse and remand to the WCJ to ensure that the testimony of Worker's HCPs are fully considered. In doing so, we wish to emphasize that nothing in this Opinion is intended to comment on the weight that should be given to the testimony of the late-designated HCPs or any other authorized medical witness. *See Chapman v. Jesco, Inc.*, 98 N.M. 707, 708, 652 P.2d 257, 258 (Ct. App. 1982) (holding that the WCJ, as fact finder, is free to reject expert opinion evidence in whole or in part).

**{38}** In that regard, we are mindful of language in the WCJ's meticulous findings and conclusions that appear to indicate that the WCJ may have fully reviewed the proffered testimony of Worker's HCPs and intended to make alternative findings of fact that their testimony was less persuasive than that of Dr. Diskant. We remand to the WCJ so that the WCJ may "reconsider [her] alternative findings of fact and conclusions of law in light of our disposition." *Reichert v. Atler*, 117 N.M. 623, 627, 875 P.2d 379, 383 (1994).

## IV. CONCLUSION

**{39}** The testimony, opinions, and records of Worker's treating HCPs should not have been categorically excluded as a result of the timing of their HCP designations. We therefore reverse the contrary decision of the Court of Appeals and remand to the WCJ for further proceedings in accordance with this Opinion.

**{40}** **IT IS SO ORDERED**.

_____

**CHARLES W. DANIELS, Justice**

**WE CONCUR:**

11

_____

**EDWARD L. CHÁVEZ, Chief Justice**

_____

**PATRICIO M. SERNA, Justice**

_____

**PETRA JIMENEZ MAES, Justice**

_____

**RICHARD C. BOSSON, Justice**

**Topic Index for *DeWitt v. Rent-A-Center*, No. 30,640**

| AL | **ADMINISTRATIVE LAW AND PROCEDURE** |
|----|----|

| AL-AA | Administrative Appeal |
| AL-SC | Scope of Review |
| AL-SR | Standard of Review |

| EL | **EMPLOYMENT LAW** |
|----|----|

| EL-DB | Disability |

| ST | **STATUTES** |
|----|----|

| ST-IP | Interpretation |

| WC | **WORKERS COMPENSATION** |
|----|----|

| WC-BG | Benefits, General |
| WC-MT | Medical Treatment |
| WC-NO | Notice |
| WC-EW | Expert Witness |
| WC-PE | Pre-Existing Condition |
| WC-RG | Workers' Compensation Regulations |
| WC-WG | Workers' Compensation, General |