This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**MARY ANN SAIZ,**

     Worker-Appellee,

v.                            **NO. 29,667**

**SAN MIGUEL COUNTY and**
**NEW MEXICO COUNTY**
**INSURANCE AUTHORITY,**

     Employer/Insurer-Appellants.

**APPEAL FROM THE NEW MEXICO WORKERS' COMPENSATION ADMINISTRATION**
**Gregory D. Griego, Workers' Compensation Judge**

Annie-Laurie Coogan
Santa Fe, NM

for Appellee

Kelly A. Genova, P.C.
Kelly A. Genova
Albuquerque, NM

for Appellants

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

Employer/Insurer (Employer) appeals from a compensation order and an order denying reconsideration of the compensation order. We issued an order of limited remand to obtain supplemental findings from the Workers' Compensation Judge (WCJ). We received supplemental findings from the WCJ and issued a notice of proposed summary disposition, proposing to affirm. Employer responded to our notice with a memorandum in opposition. We have considered Employer's response and remain unpersuaded that the WCJ erred. We therefore affirm.

On appeal, Employer challenges the WCJ's calculation of Worker's average weekly wage and compensation rate under Subsection (C) of NMSA 1978, § 52-1-20 (1990), rather than under the formula provided by Subsection (B) of that statute. [DS 5] We issued an order of limited remand for the purpose of obtaining written findings explaining the basis for the WCJ's determination that Worker's wage cannot be fairly calculated under Section 52-1-20(B) and that it should be calculated by dividing Worker's total 2006 wages by 52. [RP 117 fof 9 & 10]

The WCJ's supplemental findings explain that calculations under Subsection (B) would be unfair because Worker's multiple injuries caused her health to decline over time, which has materially affected her wages. [Supp. RP 210] The WCJ stated that it based its findings on the payroll records, which indicate that there has been a

2

marked decline in Worker's overtime wages after the first accident. [Id.]

We review the WCJ's chosen method of calculating a worker's average weekly wage for substantial evidence. *Griego v. Bag 'N Save Food Emporium*, 109 N.M. 287, 290, 784 P.2d 1030, 1033 (Ct. App. 1989). In appeals from the WCJ, we review the whole record when assessing the sufficiency of evidence. *Chavarria v. Basin Moving & Storage*, 1999-NMCA-032, ¶ 11, 127 N.M. 67, 976 P.2d 1019.

In the present case, Worker had three work-related accidents, involving multiple injuries. [RP 116-117] The first accident occurred in February 2007, and the last accident occurred in February 2008. [Id.] Worker's activities were not medically restricted until March 2008. [RP 119] In its docketing statement, Employer complained that there was no medical evidence to support the conclusion that Worker was restricted in her duties before March 2008 and that there was no evidence that Worker worked fewer hours after the first two accidents, because of them. [DS 4]

The WCJ found that Worker's overtime wages markedly declined after the first accident based on the payroll records. [Supp. RP 210] In addition, it appeared that Worker testified that she did not work as much overtime after her accidents as she did before her accidents in 2006. [DS 5] *See* § 52-1-20(A) (stating that "'average weekly wage' means the weekly wage earned by the worker at the time of the worker's injury, including overtime pay"). Based on this evidence, the WCJ concluded that Worker's

3

average weekly wage could not be fairly calculated under Section 52-1-20(B) because her overtime hours had been steadily declining by the time she was placed on medical restrictions. Therefore, instead of determining Worker's average weekly wage based on the twenty-six weeks before she was placed on medical restrictions, under Subsection (B), the WCJ ruled that the average weekly wage should be based on Worker's 2006 wages. [RP 117 fof 9 & 10]

We stated that we were not persuaded that the WCJ's chosen method of how to determine Worker's average weekly wage must be based on medical evidence and that Employer does not refer this Court to any authority demanding that result. Subsection (C) permits the average weekly wage to be computed based on facts presented when Subsection (B) would not fairly compute the weekly wage due to "the nature of the employment or the fact that the injured employee has been ill or in business for himself" or for any other reason why the method described in Subsection (B) does not fairly reflect the average weekly wage. These are not medical determinations. *See Kendrick v. Gackle Drilling Co.*, 71 N.M. 113, 117, 376 P.2d 176, 179 (1962) (considering the purpose of determining average weekly wage and stating that the "'disability' of an injured workman is to be measured by his loss of wage earning ability caused by the accidental injury," which is done by comparing "what the employee would have earned had he not been injured and what he is able

4

to earn in his injured condition"). Determining the average weekly wage appears to be a factual determination about the effect Worker's injuries have had on her wages that need not be based upon medical evidence. Furthermore, we stated, it appeared that the WCJ's chosen method of calculation was based upon substantial evidence.

In response to our notice, Employer argues that there was insufficient evidence presented to support the WCJ's findings. Employer argues that there was no evidence to support the WCJ's decision that Worker worked fewer hours after her accidents, because of her accidents. [MIO 3] Employer continues to point out that no physician or other witness testified that Worker should have stopped working before March 2008 or that her injuries disabled her from working. [MIO 3-4] Employer argues that because there was no evidence as to why Worker's wages declined and because the date of her disability was March 2008, after her accidents, there was insufficient evidence to support the WCJ's determination that use of Subsection (B) was unfair. [MIO 4-5]

Additionally, as we explained in our notice, we are not persuaded that Subsection (C) requires expert-based findings based on medical evidence, as do the determinations about disability. [*See* MIO 3-4] Rather, Subsection (C) gives the WCJ discretion to compute average weekly wage in a manner that is fair under the circumstances. *See* § 52-1-20(C) (permitting discretion to determine "the average

5

weekly wage, in each particular case, computation of the average weekly wage of the employee in such other manner and by such other method as will be based upon the facts presented fairly determine such employee's average weekly wage"). Also, unlike the specific and layered determinations required for the various forms of disability, the Workers' Compensation Act does not demand specific findings for the use of the term "illness" in Subsection (C). We are not persuaded, therefore, that disability and illness should be treated identically insofar as requiring expert-based findings.

We further disagree that there was no evidence to support the district court's determinations. Worker testified that she did not work as much overtime after her accidents as she did before her accidents in 2006. [MIO 3] Also, the WCJ considered the payroll records, which indicated that her overtime wages declined markedly after the first accident. [*See* Supp RP 210] Employer admits that Worker's wages did decline after her three accidents, but emphasizes that no expert testified that this decline resulted from any disability because of the accidents. [MIO 4] There is no indication that Employer presented any evidence as to why Worker's wages markedly declined after her accidents or that they declined for some reason unrelated to her injuries. The WCJ, as the finder of fact, weighs the evidence and reasonably inferred, based on the evidence before it, that Worker's overtime hours and wages declined

6

because of the condition she was in that resulted from her multiple injuries. *See DeWitt v. Rent-A-Center, Inc.*, 2009-NMSC-032, ¶ 22, 146 N.M. 453, 212 P.3d 341 (observing that "we will not reweigh the evidence nor substitute our judgment for that of the WCJ" because these are determinations uniquely within the province of the factfinder). Without any evidence contradicting the reasonable inference that Worker's hours and wages declined because of her injuries, our whole record review demands affirmance.

Employer rejects the applicability of the provision permitting the WCJ to diverge from the statutory formula for determining average weekly wage based on illness, arguing that it is inapplicable to cases involving a disability that is described and determined. [MIO 6] Employer does not refer this Court to any authority to support this view. *See In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (stating that when a party cites no authority to support an argument, we may assume no such authority exists); *ITT Educ. Servs., Inc. v. Taxation & Revenue Dep't*, 1998-NMCA-078, ¶ 10, 125 N.M. 244, 959 P.2d 969 (stating that this Court will not consider propositions that are unsupported by citation to authority).

Lastly, Employer draws an analogy between the determinations of a worker's "average weekly wage" and "primary employment." [MIO 7-8] We are not persuaded that Employer has demonstrated error by use of this analogy. As we stated,

there was sufficient evidence that Worker's wages declined because of her injuries and that use of her pre-injury wages is not unreasonable.

For the reasons stated above and in our notice, we affirm the compensation order.

**IT IS SO ORDERED.**


_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**


_____
**MICHAEL D. BUSTAMANTE, Judge**


_____
**MICHAEL E. VIGIL, Judge**