This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**PETE LEYBA,**

Worker-Appellee,

v.                                                                                          **NO. 32,636**

**COLORADO CASUALTY**
**INSURANCE COMPANY,**

Insurer,

**THUNDERBIRD SUPPLY CO., INC., and**
**CONTINENTAL WESTERN INSURANCE**
**UNION STANDARD INSURANCE,**

Employer/Insurers-Appellants.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Terry S. Kramer, Workers' Compensation Judge**

Kathryn L. Eaton
Albuquerque, NM

for Appellee

Doughty & West, P.A.
Minerva C.R. Camp
Albuquerque, NM

Bannerman & Johnson, P.A.
Margaret Graham

Albuquerque, NM

for Appellants

**MEMORANDUM OPINION**

**VANZI, Judge.**

{1}    Appellants Employer/Insurer Thunderbird Supply Co. and Insurer Continental Western Insurance of the Union Standard Insurance Group (collectively, Insurer) appeal from the workers' compensation judge's (WCJ) ruling that Appellee Pete Leyba's (Worker) second work accident did not cause or contribute to Worker's shoulder injury from his first work accident. [RP Vol.II/248] Our notice proposed to affirm, and in response, Insurer filed a supplemental record proper and memorandum in opposition.  We remain unpersuaded by Insurer's arguments, and therefore affirm.

{2}    Insurer continues to dispute the WCJ's determination that Worker's disability was solely caused by his November 2008 work-related accident (first accident), and that Worker's subsequent July 2010 work-related accident (second accident) did not cause or contribute to his injury or disability. [DS 3; MIO 3-17] *See generally* NMSA 1978, § 52-1-28(B) (1987) ("In all cases where the employer or his insurance carrier deny that an alleged disability is a natural and direct result of the accident, the worker must establish that causal connection as a probability by expert testimony of a health care provider . . . testifying within the area of his expertise.").  In reviewing whether

Worker proved the requisite causal connection, we apply a whole record standard of review and will affirm if, after taking the entire record into consideration, "there is evidence for a reasonable mind to accept as adequate to support the conclusion reached." *Tallman v. ABF (Arkansas Best Freight)*, 108 N.M. 124, 128, 767 P.2d 363, 367 (Ct. App. 1988), *holding modified on other grounds by Delgado v. Phelps Dodge Chino, Inc.*, 2001-NMSC-034, 131 N.M. 272, 34 P.3d 1148. We review the WCJ's application of the law to the facts, however, de novo. *Tom Growney Equip. Co. v. Jouett*, 2005-NMSC-015, ¶ 13, 137 N.M. 497, 113 P.3d 320.

{3}    As extensively detailed in our notice, evidence was presented through the testimony of Dr. Babinski that Worker's shoulder injury was solely caused by his first accident. [RP Vol.II/253-54]  Based on his evaluation of Worker and on his review of Worker's MRI studies [RP Vol.II/250], Dr. Babinski opined that, to a reasonable degree of medical probability, Worker's right shoulder injuries – including a rotator cuff tear ultimately necessitating surgical repair – were causally related to the first accident [RP Vol.II/239, 250], and that the second accident provided only a temporary flare-up of Worker's shoulder injury that did not materially change the nature of Worker's shoulder injury. [RP Vol.II/229, 240, 250-51, 254]  Consistent with Dr. Babinski's opinion, Worker's complaints of shoulder pain continued to worsen following the first accident [RP Vol.II/237] and Worker did not have lasting relief from the shoulder pain between the first and second accidents. [RP Vol.II/250]

{4}     Despite the foregoing, however, Insurer continues its efforts to cast doubt on Dr. Babinski's causation testimony.  In this regard, Insurer maintains that Dr. Babinski's causation testimony was "unreliable" on the asserted basis that Worker misrepresented his medical history. [MIO 3, 7] As support for this assertion, Insurer emphasizes that "Worker did not mention or explain the mechanism of the second injury at the October 18, 2010, visit with Dr. Babinski." [DS 5-6, 7; MIO 3, 4, 6] and that Dr. Babinski "could not tell the judge the mechanism or date of the second injury." [MIO 4, 6] As provided in our notice, however, these asserted deficiencies were a matter for the WCJ as fact finder to consider when weighing the evidence. *See Moya v. City of Albuquerque*, 2008-NMSC-004, ¶ 6, 143 N.M. 258, 175 P.3d 926 (stating that it is for the WCJ as the fact finder to assess credibility and weigh the evidence).

{5}     We note also that, while Insurer emphasizes that Dr. Babinski had only reviewed one MRI study at Worker's initial October 18, 2010, office visit [MIO 3-4], evidence was introduced that, ultimately, Dr. Babinski had knowledge of both work place accidents [RP Vol.II/250] and reviewed separate MRI studies of Worker's right shoulder taken after both the first and second accidents.  [RP Vol.II/229, 239, 250] Moreover, to the extent Dr. Babinski did not have complete medical records from Drs. Ang, Thoms, or Kamps in his file [MIO 6], we note that this too was a matter for the WCJ to consider in weighing the evidence, *id.*, and that Dr. Babinski  nonetheless was

4

not prohibited from basing his opinion on his own evaluation of Worker and on his own review of Worker's MRI's. Thus, although Dr. Kamps had a different medical opinion than Dr. Babinski [MIO 9-10] and viewed the MRI results differently than did Dr. Babinski [MIO 9], it was the WCJ's prerogative as fact finder to rely on Dr. Babinski's assessment of Worker's injury. *See id.*

{6}    Further, while Insurer maintains that Worker's repetitive use of his shoulder after the first accident could have caused Worker's bicep tear such that Worker did not become a surgical candidate until after the second accident [MIO 8, 10], the WCJ as fact finder was entitled to rely on Dr. Babinski's testimony that the second accident provided only a temporary flare-up of Worker's shoulder injury that did not materially change the nature of Worker's shoulder injury. [RP Vol.II/229, 240, 250-51, 254] In doing so, the WCJ could have considered, among other matters, evidence that while Worker did not have surgery after the first accident, Worker elected not to because he desired to obtain a second opinion. [RP Vol.II/227, 236, 249]

{7}    In sum, because it was within the WCJ's prerogative to weigh conflicting evidence and because the MRI results may be viewed to support the WCJ's conclusion that Worker's shoulder injury was causally related only to the first accident, but not the second work accident, we conclude that the evidence supports the WCJ's ruling that Worker's injury was solely caused by the first accident. [RP Vol.II/253-54] *See DeWitt v. Rent-A-Center, Inc.*, 2009-NMSC-032, ¶ 12, 146 N.M. 453, 212 P.3d 341

5

("Substantial evidence on the record as a whole is evidence demonstrating the reasonableness of [the WCJ's] decision, and we neither reweigh the evidence nor replace the fact finder's conclusions with our own."). We therefore affirm.

{8}     **IT IS SO ORDERED.**

_____

**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**MICHAEL D. BUSTAMANTE, Judge**