This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-40191

**IRENE MOORHEAD,**

Worker-Appellant,

v.

**HYATT REGENCY TAMAYA and NEW HAMPSHIRE INSURANCE COMPANY,**

Employer/Insurer-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Leonard J. Padilla, Workers' Compensation Judge**

Michael J. Doyle
Los Lunas, NM

for Appellant

Maestas & Suggett, P.C.
Paul Maestas
Albuquerque, NM

for Appellees

### MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** Irene Moorhead (Worker) appeals a decision of the workers' compensation judge (WCJ) denying Worker's claims for benefits based on the WCJ's finding that Worker's injury was caused by a preexisting condition or occurred outside of work. Worker argues that (1) insufficient evidence supported the WCJ's finding that a discrete accident occurred after work; (2) the independent medical examiner (IME) used an incorrect causation standard and, as a result, his testimony should not have been relied upon by

the WCJ; and (3) Worker's expert provided sufficient, uncontradicted evidence to establish aggravation. We reverse and remand.

**BACKGROUND**

**{2}**     Worker was employed by Hyatt Regency Tamaya (Employer) as a housekeeper. To perform her job activities, Worker often kneeled. Worker had preexisting osteoarthritis and a preexisting medial meniscus tear. Before Worker's alleged work accident, she had experienced pain in her left knee, which she usually treated with Advil. Worker testified that on November 15, 2019, she had pain in her knee and took an Advil to help with the pain. She also testified that her knee hurt again after she left work and stopped at Walgreens. At Walgreens, Worker attempted to get out of her vehicle, but found that she could not due to pain in her left knee. This pain was severe and different in intensity than the pain she had previously experienced.

**{3}**     The next day, Worker went to urgent care because her knee was swollen and continued to hurt. She was referred to Employer's doctor after informing her manager and human resources of her injury. After experiencing no improvement, Worker eventually underwent a total knee replacement. When Worker filed for temporary total disability and permanent partial disability, as well as medical costs, Employer denied Worker's claims, asserting that "Worker was not hurt on the job" and that "[a] causal link between disability and accident has not been shown to a reasonable medical probability."

**{4}**     Before trial, two expert witnesses gave deposition testimony on the cause of Worker's injury. Worker's authorized health care provider, Dr. William L. Ritchie, saw Worker on January 9, 2020, and testified that she complained of left knee pain. In his report from that visit, he wrote that "[h]er exam and history are consistent with exacerbation or aggravation of pre-existing osteoarthritis" and that "[s]he does . . . frequent kneeling as a housekeeper and I believe this is causally related to that."[1] In Dr. Ritchie's deposition, he confirmed that this was still his opinion to a reasonable medical probability.

**{5}**     The IME, Dr. Daniel C. Wascher, opined that Worker's pain was caused by the natural progression of Worker's preexisting osteoarthritis. He explained that Worker "had symptomatic arthritis in the knee prior to the November 2019 [incident a]nd . . . no history that . . . there was a traumatic event to the knee that would have caused an acute structural change in the knee joint. . . . I think this was just the . . . natural history of a degenerative process that was wearing and wearing and wearing and finally got to the point where things went." Dr. Wascher testified that to a reasonable medical probability, Worker's kneeling or other activities at work did not aggravate or exacerbate her preexisting osteoarthritis, but that they "[brought] out [the] symptoms of her osteoarthritis."

---

1Dr. Ritchie explained that Worker's medial meniscus tear probably preexisted the November 15, 2019 accident, and that it was part of the arthritis in her left knee.

**{6}** On September 9, 2021, the WCJ held a trial on the merits. The WCJ denied Worker's claims and found that "[t]he pain and problems Worker has experienced in her left knee since November 15, 2019, are causally related to the natural progression of Worker's pre-existing OA and/or any accident Worker suffered while in the Walgreens parking lot." Worker appeals.

## DISCUSSION

### I. Substantial Evidence Did Not Support the WCJ's Finding That Worker Suffered an Accident in the Walgreens Parking Lot

**{7}** We begin our review with Worker's challenge to the sufficiency of the evidence supporting the WCJ's finding that Worker's accident occurred outside of work in the parking lot of Walgreens. "We review factual findings of Workers' Compensation Administration judges under a whole record standard of review." *Dewitt v. Rent-A-Center, Inc.*, 2009-NMSC-032, ¶ 12, 146 N.M. 453, 212 P.3d 341. "We view the evidence in the light most favorable to the decision," since "we have always given deference to the fact finder, even when we apply, as here, whole record review." *Id.* (internal quotation marks and citation omitted). Whole record review requires "a canvass by the reviewing court of all the evidence bearing on a finding or decision, favorable and unfavorable, in order to determine if there is substantial evidence to support the result." *Tallman v. Arkansas Best Freight*, 1988-NMCA-091, ¶ 9, 108 N.M. 124, 767 P.2d 363. Substantial evidence is such evidence that "a reasonable mind [would] accept as adequate to support the conclusion reached." *Id.* ¶ 10.

**{8}** Employer argues that Worker's own testimony was sufficient to establish that her injury was caused by an incident or accident at Walgreens, after work. Employer relies on Worker's testimony that she experienced a significant increase in pain when she attempted to get out of her car at Walgreens. While there is ample, undisputed evidence that Worker felt an increase in pain at Walgreens, the record contains no evidence to establish that an "incident/accident or event that incited the excruciating pain and subsequent symptoms" occurred at Walgreens, as Employer contends.

**{9}** At trial, Worker testified that she had felt pain in her left knee while at work earlier that day. She took an Advil and the pain went away. However, Worker stated that her knee hurt more after she left work once her body relaxed, and the pain hit her when she attempted to get out of her vehicle. The pain was so great that Worker never got out of the vehicle and just drove home. Worker testified that the pain was different and significantly more severe than the pain she had felt during the day. Worker testified, "I didn't go anywhere else and I didn't bump it or anything. Just went to get down from the car."

**{10}** On cross-examination, Employer's counsel attempted to elicit testimony that Worker had gotten out of her car and attempted to walk in the Walgreens parking lot. Worker clarified that she never got out of her vehicle or attempted to walk while at Walgreens—that her knee pain prevented her from doing those things and she simply

went home. Nevertheless, Employer argued at closing that Worker's testimony regarding the sudden onset of her severe pain at Walgreens demonstrated that "whatever happened at Walgreens significantly worsened her left knee complaint" and that, as a result, there was no on the job accidental injury.[2]

**{11}** Worker's testimony, upon which Employer relies, does not establish any incident or accident occurred at Walgreens. On the contrary, Worker's testimony established only that she experienced an increase in pain when she stopped at Walgreens. The apparent inference both Employer and the WCJ appear to have drawn is that an increase in pain meant that Worker suffered some kind of accident at Walgreens—i.e., that correlation alone proves causation. However, the record does not support such an inference given the total absence of evidence of a discrete trauma to the knee at Walgreens and uncontroverted testimony from both parties' medical experts that no such traumatic event happened. Indeed, both experts agreed that Worker's symptoms were related to her preexisting osteoarthritis and not a discrete trauma event. Consequently, even viewing the evidence in the light most favorable to the WCJ's decision, we conclude that substantial evidence does not support the WCJ's finding that Worker's knee pain was caused by an accident or injury in the Walgreens parking lot.

## II. Aggravation of Worker's Preexisting Condition

**{12}** Worker's theory below was that she suffered a compensable aggravation injury. The WCJ found as an alternative basis for denying Worker's claim that "[t]he pain and problems Worker has experienced in her left knee since November 15, 2019, are causally related to the natural progression of Worker's pre-existing [osteoarthritis]." Worker maintains that substantial evidence supports her aggravation theory and that any contrary evidence presented by Dr. Wascher was based on an incorrect causation standard.

**{13}** Where, as here, an employer disputes whether a workplace accident caused the worker's disability, NMSA 1978, Section 52-1-28(B) (1987) "requires the worker to establish causation as a probability by expert testimony of a health care provider." *Molinar v. Larry Reetz Constr., Ltd.*, 2018-NMCA-011, ¶ 29, 409 P.3d 956 (internal quotation marks and citation omitted). "Causation exists within a reasonable medical probability when a qualified medical expert testifies as to his opinion concerning causation and, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was a result of its action." *Id.* ¶ 28 (internal quotation marks and citation omitted).

**{14}** This Court examined the causation standard in detail in *Molinar*, and we rely on it here. In *Molinar*, we stated that

---

[2]Employer also raises the argument that Worker's injury is not compensable under NMSA 1978, Section 52-1-19 (1987). However, this argument appears based on Employer's assertion that an accident occurred at Walgreens. Since sufficient evidence does not support that conclusion, we do not consider this argument.

> [i]n order to establish causation under the Act, a worker must show that [their] disability more likely than not was a result of [their] work-related accident. It is settled that the contributing factor need not be the major contributory cause. To be compensable, a worker's accident need not be the sole cause of [their] disability or death; a worker need only show that it was a contributing cause. The work-related cause may, in fact, be a minor factor so long as the worker establishes that, as a matter of medical probability, it was a cause of the disability. . . . Once a worker establishes that the accidental injury caused disability, it matters not whether a preexisting condition contributed to the ultimate disability.

*Id.* (alterations, internal quotation marks, and citations omitted).

**{15}** These "principles of causation are equally applicable to the assessment of compensability regardless of whether an accidental injury is new or if it entails aggravation of a preexisting condition." *Id.* "Aggravation, acceleration, or worsening of a preexisting condition is, itself, a discrete type of injury and can occur either as a result of a single accidental incident or develop over time as a result of employment activities." *Id.* ¶ 23. If "the employment acts on the preexisting condition to hasten the appearance of symptoms or accelerate its injurious consequences, the employment will be considered the medical cause of the resulting injury." *Id.* (internal quotation marks and citation omitted).

**{16}** "[I]t is well established in New Mexico law that experiencing increased pain is sufficient to constitute aggravation of a preexisting condition and thus a compensable injury." *Id.* ¶ 45. Importantly, "[t]here is no requirement that there be a physical tissue change for there to be a compensable disability." *Id.* ¶ 23 (internal quotation marks and citation omitted). Thus, a worker is "not required to show a *medical* aggravation—i.e., physiological deterioration—of [their] condition in order to establish that [they] had suffered an aggravation-type injury, but only that the work-related accident aggravated the preexisting condition by changing the course of the ailment or its treatment." *Id.* ¶ 45 (alterations, internal quotation marks, and citation omitted).

**{17}** Worker argues that the IME applied—and that the WCJ relied upon—an incorrect standard for determining whether Worker suffered an aggravation of a preexisting injury. After reviewing Dr. Wascher's deposition testimony, we agree.

**{18}** Dr. Wascher testified that he did not believe there was aggravation because there was no evidence of a specific trauma to Worker's left knee:

| Worker's Attorney: | Doctor, you agree with me that a worker with a preexisting medical condition can aggravate that condition as a result of on-the-job-activities over time? |
|---|---|
| Employer's Attorney: | Object to the form. |

| Dr. Wascher: | Yeah, I would say the aggravation usually occurs from a specific injury, not from just normal day-to-day activities. |
|---|---|
| Worker's Attorney: | So I want to break that down. So it's your opinion then, that you don't agree that it can occur over time. You're looking for a specific incident? |
| Dr. Wascher: | Correct. I think it's otherwise difficult to differentiate between aggravation from their activity versus the natural progression of the disease that we know gets worse over time. |
| Worker's Attorney: | Will you agree with me that repetitive kneeling can make preexisting osteoarthritis worse, right? |
| . . . . | |
| Dr. Wascher: | No. I think it makes the symptoms more, but it doesn't make the arthritis worse. |

When asked how he defined "aggravation," Dr. Wascher responded that "[a]ggravation is a permanent worsening of a medical condition" from baseline. He then indicated that aggravation required a physical tissue change:

| Worker's Attorney: | Doctor, you agree with me that there doesn't have to be a physical tissue change to a preexisting osteoarthritis in order for there to be an aggravation of it? |
|---|---|
| Employer's Attorney: | Object to the form. |
| Dr. Wascher: | I disagree with that. |

And when asked what types of things aggravate preexisting osteoarthritis, Dr. Wascher answered:

| Dr. Wascher: | So, typically, there's an actual event or injury that occurs, whether it's a fall or a—some kind of direct blow to the knee where a worker can say, I fell off a ladder and damaged my knee. They knock off a piece of chondral material. They get a subchondral fracture. They tear a ligament. Those kinds of things I think can aggravate preexisting osteoarthritis. |
|---|---|
| Worker's Attorney: | So you're saying a traumatic event? |
| Dr. Wascher: | Correct. |

Dr. Wascher was clear that his ultimate conclusion regarding the cause of Worker's pain rested on his understanding that there must be a discrete traumatic event with physical changes to the knee joint to establish aggravation:

Employer's Attorney: And would you explain to the judge why in this case you believe that [Worker]'s symptoms are the natural progression of her preexisting osteoarthritis.

Dr. Wascher: So I think a couple of things. One is we know she had symptomatic arthritis in the knee prior to the November 2019 events. And then, secondly, there's really no history that—in the records or that she gave me—that there was a traumatic event to the knee that would have caused an acute structural change in the knee joint.

**{19}** It is evident from Dr. Wascher's testimony that he believed a physical tissue change was required to establish aggravation, and that no aggravation occurred in this case because no traumatic incident or physical tissue change occurred. In light of *Molinar*, this is an incorrect standard for determining whether Worker suffered an "aggravation" of her preexisting osteoarthritis under New Mexico's worker's compensation law. 2018-NMCA-011, ¶ 45 ("[I]t is well established in New Mexico law that experiencing increased pain is sufficient to constitute aggravation of a preexisting condition and thus a compensable injury, and that there need not be physical tissue change for there to be a compensable disability." (internal quotation marks and citations omitted)).

**{20}** Employer argues that Dr. Wascher's causation opinion was not based solely upon the premise that Worker did not sustain a discreet, traumatic event or accident at work. While it is clear that Dr. Wascher believed all of Worker's symptoms were the result of the natural progression of her preexisting osteoarthritis, the portions of Dr. Wascher's testimony upon which Employer relies fail to establish that Dr. Wascher was willing to consider aggravation in the absence of a physical tissue change, or that he applied the correct standard for evaluating aggravation under *Molinar*, i.e., whether Worker's employment activities aggravated her preexisting osteoarthritis by changing the course of the ailment or its treatment. *See id.* ¶¶ 22, 45-46.

**{21}** For these reasons, we conclude that Dr. Wascher's causation opinion was founded upon an incorrect legal standard. Under *Molinar*, when an opinion fails to comport with statutory standards, it is "incorrect as a matter of law" and cannot be relied upon by the WCJ to support a finding that Worker did not suffer an aggravation injury. *Id.* ¶ 42 (internal quotation marks and citation omitted).

III. **Worker Met Her Burden of Establishing Through Expert Testimony a Causal Connection Between Her Work-Related Accident, Her Injury, and Her Inability to Work**

**{22}** Even though we agree with Worker that Dr. Wascher applied an incorrect causation standard, we must still evaluate whether Worker met her burden of establishing, through expert testimony, a causal connection between her work-related accident, her injury, and her inability to work. *See id.* ¶ 34. In the case of an alleged aggravation, Worker must show that "the work-related accident aggravated the preexisting condition by changing the course of the ailment or its treatment." *Id.* ¶ 45 (alterations, internal quotation marks, and citation omitted). Put differently, Worker must prove that "the employment act[ed] on the preexisting condition to hasten the appearance of symptoms or accelerate its injurious consequences." *Id.* ¶ 23 (internal quotation marks and citation omitted).

**{23}** Worker argues that there is substantial evidence that the kneeling and other activities she performed as part of her job as a housekeeper worsened the symptoms and pain in her left knee, causing aggravation of her preexisting osteoarthritis. Worker presented testimony from Dr. Ritchie, who stated that to a reasonable medical probability, Worker's debilitating pain was causally related to her kneeling, and that her kneeling aggravated her preexisting osteoarthritis. Just as in *Molinar*, Worker's expert witness "unequivocally identified Worker's injury as being an aggravation of [Worker's preexisting condition], evidenced by Worker's increased pain and 'inability to cope.'" *See id.* ¶ 34. And here, uncontested testimony established Worker suffered a loss of mobility and had not sought treatment for the pain in the joint previously. *See id.* ¶ 46. Based on the foregoing, we conclude Dr. Ritchie's testimony was sufficient to establish causation.

**{24}** We address two further, related points. First, to the extent Employer argues that it rebutted Dr. Ritchie's causation testimony with Dr. Wascher's testimony, we have already concluded that Dr. Wascher's aggravation opinions failed to comport with the statutory standard for aggravation, and are therefore insufficient as a matter of law to contradict Dr. Ritchie's opinion that Worker suffered an aggravation injury. Because Dr. Ritchie's opinion that Worker suffered an aggravation injury is uncontradicted, it is binding on the WCJ and this Court. *See Banks v. IMC Kalium Carlsbad Potash Co.*, 2003-NMSC-026, ¶ 35, 134 N.M. 421, 77 P.3d 1014 (stating that New Mexico courts follow the uncontradicted medical evidence rule in reviewing a worker's proof of causation, where "uncontradicted evidence in the form of that type of proof [required by the statute] is binding on the trial court" (internal quotation marks and citation omitted)).

**{25}** Second, to the extent Employer maintains that Dr. Wascher's testimony is sufficient to establish that Worker's current disability resulted from the natural progression of her osteoarthritis, Employer bore the burden of production "to show that the effects of the preexisting condition are identifiably separate and unrelated." *Molinar*, 2018-NMCA-011, ¶ 30 (internal quotation marks and citation omitted). Here, the only evidence on which Employer relies is the testimony of Dr. Wascher, and Dr. Wascher's testimony does not establish that Worker's symptoms are unrelated to her work activities. On the contrary, Dr. Wascher testified that the physical work required of Worker's job as a housekeeper contributed to her symptoms and worsened her pain:

| | |
|---|---|
| Worker's Attorney: | [Do y]ou agree that repetitive kneeling at work worsened . . . Worker's preexisting left knee osteoarthritis pain and symptoms? |
| Employer's Attorney: | Form and foundation. |
| Dr. Wascher: | Again—again, I think it increased her symptoms, but I do not think it increased her arthritis. |

Dr. Wascher also testified that, to a reasonable degree of medical probability, Worker's current pain was causally related to repetitive kneeling at work. Likewise, Dr. Wascher testified that Worker's pain had not returned to baseline, and her knee replacement surgery was reasonable and necessary in light of her continuing pain. For these reasons, we conclude Dr. Wascher's testimony does not provide substantial evidence to support a finding that it was more likely than not that Worker's current disability resulted from her preexisting condition or that its effects are identifiably separate and unrelated to her November 2019 workplace accident. *See id.* ¶ 47.

**CONCLUSION**

**{26}** For all of these reasons, we hold that there is not substantial evidence to support the WCJ's findings that Worker's left knee pain was not caused by an accidental injury as a result of her employment, and that Worker's left knee pain is a natural progression of her preexisting osteoarthritis and not a work-related injury. We reverse and remand this case to the WCA for further determination of what benefits, costs, and fees Worker may be entitled to in light of this opinion. *See id.* ¶ 51.

**{27} IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**SHAMMARA H. HENDERSON, Judge**