IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2014-NMSC-008

Filing Date: February 20, 2014

Docket No. 33,025

BERNALILLO COUNTY HEALTH
CARE CORPORATION,
d/b/a ALBUQUERQUE AMBULANCE SERVICE,

      Appellant,

v.

NEW MEXICO PUBLIC REGULATION COMMISSION,

      Appellee,

and

RUNNING BEAR, INC.,
d/b/a ROCKY MOUNTAIN EMS and AMERICAN MEDICAL RESPONSE
AMBULANCE SERVICE, INC.,

      Real Party in Interest.

Consolidated with:

Docket No. 33,054

SUPERIOR AMBULANCE COMPANY INC.,

      Appellant,

v.

NEW MEXICO PUBLIC REGULATION COMMISSION,

      Appellee,

and

1

**RUNNING BEAR, INC.,**
**d/b/a ROCKY MOUNTAIN EMS,**

     **Real Party in Interest.**

**APPEAL FROM THE NEW MEXICO PUBLIC REGULATION COMMISSION**

Montgomery & Andrews, P.A.
Randy S. Bartell
Lara Katz
Santa Fe, NM

for Appellant Bernalillo County Health Care Corporation d/b/a Albuquerque Ambulance
Service

Sanchez, Mowrer & Desiderio, P.C.
F. M. Mowrer
Albuquerque, NM

Rose Bryan, P.C.
Kathleen Rosemary Bryan
Los Angeles, CA

for Appellant Superior Ambulance Company Inc.

Margaret Kendall Caffey-Moquin
Santa Fe, NM

for Appellee New Mexico Public Regulation Commission

Cadigan & Park
Michael J. Cadigan
James J. Grubel
Albuquerque, NM

for Real Party in Interest Running Bear, Inc., d/b/a Rocky Mountain EMS

Butt, Thornton & Baehr, P.C.
Emily A. Franke
W. Ann Maggiore
Albuquerque, NM

for Real Party in Interest American Medical Response Ambulance Service, Inc.

**OPINION**

**MAES, Chief Justice.**

**{1}** This is a direct appeal from a final order of the New Mexico Public Regulation Commission (the Commission), authorizing Running Bear, d/b/a Rocky Mountain EMS (Rocky Mountain), to provide permanent motor transport authority for non-emergency ambulance transport services in Bernalillo County. We consolidated the separate appeals from the Appellants, Bernalillo County Health Care Corporation, d/b/a Albuquerque Ambulance Service (Albuquerque Ambulance) and Superior Ambulance Company (Superior). The real party in interest in both cases was Rocky Mountain. However, Rocky Mountain filed a petition for bankruptcy and American Medical Response (AMR) purchased the authority of Rocky Mountain to operate its ambulance service. This purchase was approved by both the Commission[1] and the United States Bankruptcy Court for the District of New Mexico. Thus, AMR has been substituted for Rocky Mountain as an intervening party in this appeal.

**{2}** Appellants argue that the final order was arbitrary and capricious because Rocky Mountain failed to satisfy the statutory requirements of NMSA 1978, Section 65-2A-8 (2003) which is part of the New Mexico Motor Carrier Act (the Act), NMSA 1978, §§ 65-2A-1 to -40 (2003, as amended through 2007). Intervening party AMR argues that any fitness issues relating to Rocky Mountain are moot following AMR's purchase of the operating license.

**{3}** We hold that fitness issues relating to Rocky Mountain are not moot and that the final order issued by the Commission was arbitrary and capricious. Therefore, we annul and vacate the final order of the Commission and revoke the original certificate endorsement allowing Rocky Mountain to provide non-emergency ambulance transport services in Bernalillo County.

## I.     PROCEDURAL HISTORY

**{4}** Rocky Mountain had provided ambulance transport services in San Miguel, Los Alamos, and Santa Fe Counties since 1991. Rocky Mountain filed an original application for endorsement and original request for temporary authority with the Commission on March 15, 2010, seeking authority to provide ambulance services in Bernalillo County. Albuquerque Ambulance and Superior, the two primary local providers in Bernalillo County, opposed the application and filed motions to intervene in the proceedings before the Commission. The director of the Transportation Division recommended that the application

---

[1]*See* Final Order Conditionally Approving Transfer of Authority, Commission Case No. 11-00453-TR-T, issued Mar. 16, 2012.; *In re Running Bear Rescue, Inc.*, No. 11-12453-s11 (Bankr. D.N.M. 2011).

be denied. The Commission rejected the director's recommendation, granted Rocky Mountain's application for temporary authority, and referred the issue of permanent authority to a hearing examiner at the Commission.

**{5}** After a hearing on Rocky Mountain's application for permanent authority, the hearing examiner issued a decision recommending that the application be denied because Rocky Mountain was not fit, willing, and able to provide ambulance services at the time of its application, nor had the company been in compliance with applicable laws and regulations. The Commission rejected the hearing examiner's recommendation and issued its final order granting Rocky Mountain limited authority to provide non-emergency ambulance transport services in Bernalillo County but, among other requirements, limiting the number of vehicles it could operate, requiring random spot checks of vehicles, and requiring that Rocky Mountain submit verified financial statements to the Commission on a quarterly basis. Because the final order did not authorize emergency 911 services and Rocky Mountain did not challenge that aspect of the order, this appeal focuses solely on provision of non-emergency ambulance transport services in Bernalillo County.

**{6}** About two weeks after the Commission issued its final order, Rocky Mountain filed a petition for bankruptcy. AMR subsequently purchased Rocky Mountain's authority to operate its ambulance services with the approval of both the Commission and the United States Bankruptcy Court for the District of New Mexico. *See* n.1.

**{7}** In this direct appeal, Albuquerque Ambulance and Superior request that this Court reverse the Commission's grant of authority to Rocky Mountain, annul and vacate the final order, and revoke the certificate endorsement allowing Rocky Mountain to provide non-emergency ambulance transport services in Bernalillo County. The Commission requests that this Court affirm the Commission's final order on the merits because the criteria of the Act for granting the amended certificate were met. Alternatively, the Commission argues that this appeal is moot due to the transfer of authority to AMR, and thus the Supreme Court should not decide this case. AMR asserts that all issues relating to Rocky Mountain are now moot because Rocky Mountain is no longer a real party in interest, and asserts that the only remaining issue, public need, was established by substantial evidence and should be affirmed.

**{8}** This Court has jurisdiction over these appeals pursuant to Section 65-2A-35 and Rule 12-102(A)(2) NMRA.

## II. STANDARD OF REVIEW

**{9}** This Court must affirm the Commission's order unless the order is "arbitrary, capricious or an abuse of discretion" or "not supported by substantial evidence in the record." Section 65-2A-35(C)(1) & (2). An agency's ruling is arbitrary and capricious if the agency "failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could

not be ascribed to a difference in view." *Rio Grande Chapter of the Sierra Club v. N.M. Mining Comm'n*, 2003-NMSC-005, ¶ 12, 133 N.M. 97, 61 P.3d 806 (internal quotation marks and citation omitted). "An agency abuses its discretion when its decision is not in accord with legal procedure or supported by its findings, or when the evidence does not support its findings." *Oil Transp. Co. v. N.M. State Corp. Comm'n*, 1990-NMSC-072, ¶ 25, 110 N.M. 568, 798 P.2d 169. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *In re Comm'n's Investigation of the Rates for Gas Serv. Of PNM's Gas Servs.*, 2000-NMSC-008, ¶ 6, 128 N.M. 747, 998 P.2d 1198.

**{10}** An agency's ruling regarding statutory construction is reviewed de novo. *See Albuquerque Bernalillo Cnty. Water Util. Auth. v. N.M. Pub. Regulation Comm'n*, 2010-NMSC-013, ¶ 50, 148 N.M. 21, 229 P.3d 494 ("Statutory construction is not a matter within the purview of [the Commission's] expertise and, therefore, we afford little, if any, deference to [the Commission] on this matter." (internal quotation marks, citations, and alterations omitted)).

## III. DISCUSSION

### A. The issue of Rocky Mountain's fitness, willingness, and ability to provide services is not automatically mooted by AMR's acquisition of the certificate of authority

**{11}** AMR asserts that all issues relating to the fitness of Rocky Mountain are moot now that "the authority to operate has, upon full Commission and Bankruptcy Court review, consideration, and approval, been sold to AMR." AMR asserts that following "a determination that AMR [was] fit to provide the transport services, on December 8, 2011, the [Commission] granted Temporary Authority to AMR for the transfer of the Bernalillo County portion of [Rocky Mountain's certificate]." AMR contends that at this juncture AMR is the real party in interest, and therefore whether Rocky Mountain violated any provision of the Act or is fit, willing, and able to provide services is moot, is not a question of substantial public interest, and is not an issue that is capable of repetition yet evading review.

**{12}** Albuquerque Ambulance argues that a controversy capable of repetition still exists because "neither the purchase of the Certificate out of bankruptcy, nor the Commission's approval of that transfer resolves the question [of] whether the Certificate was validly issued in the first place." Albuquerque Ambulance and Superior assert that by issuing certificates to insolvent, unfit companies, the Commission is abdicating its statutory duties involving issues of substantial public importance that are capable of repetition and should be addressed by this Court.

**{13}** This Court does not address moot issues that will have no practical impact on the parties before us, but we will address issues of substantial public interest or issues that are capable of repetition, yet evading review. *Rivera v. Am. Gen. Fin. Servs.*, 2011-NMSC-033,

5

¶ 40, 150 N.M. 398, 259 P.3d 803 (internal quotation marks and citations omitted); *Howell v. Heim*, 1994-NMSC-103, ¶ 7, 118 N.M. 500, 882 P.2d 541 (addressing legality of a superseded regulation where similar issues could arise in future cases yet evade appellate review). In *Howell* we held that a regulation promulgated by the New Mexico Human Services Department that limited the duration of time that benefits could be received was an issue capable of repetition yet evading review because a given fiscal year's budgetary shortfall would likely end before the regulation could be reviewed by an appellate court. *Id.*

**{14}** The fact that AMR was willing to purchase Rocky Mountain's certificate out of bankruptcy and take over its operations is merely fortuitous and does not automatically dispose of the question of validity for the original certificate. As we discuss below, the evidence presented to the hearing examiner demonstrated that Rocky Mountain was not fit, willing, and able to provide ambulance services at the time of its application, nor had the company been in compliance with applicable laws and regulations. A situation where the Commission disregards statutory criteria in issuing certificates of authority could occur again in the future, with perhaps more dire consequences, when the provider is not bought out and instead precipitously exits the market, upsetting the state of emergency medical services and leaving the remaining providers scrambling to cover ambulance transport services. In addition we are concerned with the consistent mishandling of processes by the Commission and it is therefore in the public's interest that we clarify the limits of the Commission's power to grant businesses the authority to transport persons. We hold that the validity of the original certificate issued to Rocky Mountain is not moot because this is an issue capable of repetition yet evading review.

**B.      Substantial evidence did not exist to show that Rocky Mountain was fit, willing, or able to provide non-emergency services at the time of application**

**{15}** The Act requires that common motor carriers of persons must obtain a certificate of authority from the Commission. The statute in effect at the time the Commission issued the certificate to Rocky Mountain set forth three criteria that must be satisfied before a certificate may be issued to the applicant. Section 65-2A-7. First, the applicant must be fit, willing, and able to provide the service. Section 65-2A-8(B)(1).[2] Second, the applicant must be in compliance with the Act and other applicable laws and regulations. Section 65-2A-8(B)(2). Third, there must be a public need for the services. Section 65-2A-8(B)(3).

**{16}** Albuquerque Ambulance argues that the Commission's finding that Rocky Mountain was fit and able to provide non-emergency transport services was arbitrary and capricious, an abuse of discretion, and not supported by substantial evidence. Specifically, Albuquerque Ambulance asserts that the Commission adopted an incorrect standard for determining

---

[2]The final order appealed from in these consolidated cases was filed in 2011. The applicable 2003 enactment of Section 65-2A-8(B)(1) includes the word "willing"; the 2013 amendment which is not applicable, does not.

6

financial fitness when it defined the term to mean "the ability to provide the service while keeping current with one's bills." Albuquerque Ambulance points out that 11 U.S.C. § 101(32)(A)(2012) of the United States Bankruptcy Code defines insolvency as a "'financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation.'" Albuquerque Ambulance asserts that the Commission's standard was based primarily on the testimony of Rocky Mountain's sole shareholder, who stated "[s]olvent to me means you're able to run a business and pay your bills," which has no basis in law and is therefore arbitrary. Additionally, Superior argues that the Commission's financial standard is "so low that every single temporarily solvent business that applied for authority would meet the requirement regardless of evidence of past instability or lack of resources to ensure continued future service." Superior asserts that this standard renders Section 65-2A-8(B)(1) superfluous and conflicts with the Commission's own imposed requirements for ambulance services pursuant to 18.3.14 NMAC. The Commission states, without explanation, that the Commission's adoption of the definition of financial fitness consistent with the testimony of Rocky Mountain's sole shareholder was reasonable and consistent with the United States Bankruptcy Code, 11 U.S.C. § 101(32).

**{17}**   Regardless of which definition is used, Albuquerque Ambulance argues that the record establishes that Rocky Mountain was insolvent at the time of its application. Albuquerque Ambulance asserts that because Rocky Mountain overstated the value of its assets and its liabilities in its application, the balance sheet should have shown that Rocky Mountain's liabilities exceeded its assets by $100,078. Albuquerque Ambulance argues that the Commission's finding that "[Rocky Mountain] satisfies, albeit at a minimal level, the financial fitness requirement," was completely unsupported by the evidence.

**{18}**   Following our review of the record, it is clear that the evidence presented to the hearing examiner showed numerous inaccuracies and inconsistencies in the financial information submitted by Rocky Mountain as part of its application pursuant to 18.3.2.15(A) NMAC. During the hearing, evidence was presented that Rocky Mountain significantly overstated its assets on its original application, that Rocky Mountain failed to list its hundreds of thousands of dollars in tax delinquencies, that the balance sheet submitted to the Commission overstated Rocky Mountain's cash on hand by almost $30,000, and that Rocky Mountain neglected to mention two lawsuits for non-payment against it—one for approximately $450,000 by Los Alamos Bank and the other by its own insurance company. Although Rocky Mountain's CEO provided rebuttal testimony that the company was investigating "'capital infusion from private investors,'" Rocky Mountain could not provide any proof of that fact.

**{19}**   The record before the hearing examiner also demonstrated that Rocky Mountain had failed to pay federal and state taxes in the past and accrued significant liabilities. Yet the Commission still surprisingly stated, "[w]e find nothing that would warrant a finding that Rocky Mountain is not fit."

**{20}**   The Commission did not provide any basis for its authority to redefine financial

7

fitness, nor did the Commission justify its decision with any authority or explanation in its briefing to this Court. We fail to find a valid argument justifying the Commission's decision to define "financially fit" as keeping current with one's bills.

**{21}** After reviewing the record, we conclude that the Commission's holding that Rocky Mountain satisfied the financial requirement at a minimal level was arbitrary and capricious and an abuse of discretion.

**C.** **The Commission's interpretation of Section 65-2A-8(B)(2) as applied to Rocky Mountain's compliance with applicable laws and regulations is too narrow and conflicts with the goal of the Act**

**{22}** The Commission stated in its final order that although Section 65-2A-8(B) "clearly provides that [the Commission] must issue a certificate if an applicant has met all of the statute's criteria, the [Motor Carrier] Act is silent on the issue of whether the Commission has the discretion and authority to issue a certificate if the applicant fails to meet one of those criteria." In resolving that issue, the Commission applied the doctrine of *ejusdem generis* to determine that "the reference to 'rules of the Commission and other applicable federal and state laws' should be construed as those rules and statutes that serve the same or similar purposes of the safety and financial responsibility requirements of the [Motor Carrier] Act," which does not include *all* Commission rules or federal and state laws. Applying this construction, the Commission found "that the federal and state tax laws that the intervenors allege that [Rocky Mountain] violated are not within the ambit [of the] statute." The Commission further found that failure to file a compliant balance sheet, alleged tariff violations, and failure to file contracts were "outside of the types of rules and statutes included within Section 65-2A-8.B(2)." Additionally, the Commission found that Rocky Mountain violated the New Mexico Administrative Code by failing to respond with two EMTs, but the violation was not relevant because the code only applied to emergency situations and the final order only granted them the ability to provide non-emergency services.

**{23}** In reviewing the Commission's determination regarding the scope of Section 65-2A-8(B)(2), "the court should determine and effectuate the intent of the legislature using the plain language of the statute as the primary indicator of legislative intent." *State v. Ogden*, 1994-NMSC-029, ¶ 24, 118 N.M. 234, 880 P.2d 845 (internal citations omitted). In construing a statute, this Court "must take care to avoid adoption of a construction that would render the statute's application absurd or unreasonable or lead to injustice or contradiction." *State v. Nick R.*, 2009-NMSC-050, ¶ 11, 147 N.M. 182, 218 P.3d 868 (internal quotation marks and citation omitted).

**{24}** Evidence of Rocky Mountain's numerous violations of applicable statutes, rules, and regulations was presented during the hearing. Specifically, among other deficiencies, Rocky Mountain failed to pay its gross receipt taxes, failed to comply with 18.3.2.15(A)(17) NMAC (requiring a "notarized oath of the applicant attesting that all statements in the application

are true and correct") by providing false statements regarding its balance sheets, and failed to have a consultant pharmacist as required by 16.19.24.10 NMAC. Evidence was presented that Rocky Mountain had been billing at rates other than its tariff rate for scheduled transports in violation of Section 65-2A-20(C). The director of the Transportation Division testified that Rocky Mountain's past violations included: operating without an appropriate authority from the Commission, for which it received a $1,000 fine; responding to emergencies with only one EMT in violation of 18.3.14.11(A)(1) NMAC, which requires a minimum of two EMTs; and false representations made on Rocky Mountain's website that it offered special services when it was not qualified to provide such services.

**{25}** After reviewing the plain language of the Act and the intent of the statute, we conclude that the Commission's interpretation of Section 65-2A-8(B)(2) is too narrow and conflicts with the goal of the Act. While the Commission was correct that it would be unreasonable to conclude that the Legislature intended that an applicant be denied a certificate for violating *any* statute or rule, the Commission's current interpretation excludes material violations of laws and regulations directly bearing on a company's financial integrity. Excessive unpaid federal and state taxes, false and misleading documentation regarding finances submitted to the Commission, and failure to comply with approved tariff rates are all violations that speak directly to the applicable laws and regulations relating to an applicant's safety and financial responsibilities. The Commission argues that under this interpretation applicants who have received parking violations would be denied. We are not persuaded. None of the parties in these consolidated cases are arguing that the Commission should interpret the statute to include *any and all* violations of state and federal laws and regulations. Instead, the statute specifically states "applicable" laws and regulations as they relate to safety and finance. Therefore, the Commission's ruling that Rocky Mountain's violations of laws and regulations specifically pertaining to safety and financial responsibilities were irrelevant was arbitrary and capricious.

**D.      There was substantial evidence of a demonstrated public need for non-emergency services in Bernalillo County**

**{26}** This Court has "always given deference to the fact finder, even when [it applies a] whole record review." *DeWitt v. Rent-A-Center Inc.*, 2009-NMSC-032, ¶ 12, 146 N.M. 453, 212 P.3d 341 (internal quotation marks and citation omitted). "We view the evidence in the light most favorable to the decision, but may not view favorable evidence with total disregard to contravening evidence." *Id.* (internal quotation marks and citation omitted). This Court "neither reweigh[s] the evidence nor replace[s] the fact finder's conclusions with [its] own." *Id.*

**{27}** Because we do not reweigh the evidence, we defer to the hearing examiner. The thirty-nine affidavits submitted by Rocky Mountain, in addition to the pre-filed testimony of medical professionals relaying problems with non-emergency transport, constituted substantial evidence of a public need for additional providers in Bernalillo County. The Commission's holding that a public need for additional non-emergency transport existed was

not arbitrary and capricious. However, because the other two statutory criteria were not met, a finding of public need does not automatically validate the certificate issued to Rocky Mountain.

## IV.     CONCLUSION

**{28}**     Section 65-2A-8(B) requires that all criteria be satisfied before the issuance of a certificate. The Commission clearly disregarded its statutory duties when it found that Rocky Mountain satisfied all three criteria when substantial evidence had been presented to the contrary. We hold that substantial evidence did not exist to show that at the time of application, Rocky Mountain was fit, willing, and able to provide services or had complied with the applicable state and federal regulations. Because the statutory criteria were not met, the Commission's final order granting permanent authority to Rocky Mountain to provide non-emergency transport services was arbitrary and capricious.

**{29}**     We annul and vacate the Commission's order. AMR may no longer operate non-emergency transport services under the certificate of authority it purchased from Rocky Mountain, and all of its operations pursuant to that certificate must cease. Should AMR seek to provide such services again in the future, AMR must apply for a certificate of authority through the Commission and prove that it satisfies the statutory criteria under the Act.

**{30}     IT IS SO ORDERED.**

---

        **PETRA JIMENEZ MAES, Chief Justice**

**WE CONCUR:**

---

**RICHARD C. BOSSON, Justice**

---

**EDWARD L. CHÁVEZ, Justice**

---

**CHARLES W. DANIELS, Justice**

---

**BARBARA J. VIGIL, Justice**

**Topic Index for *Bernalillo Co. Health Care Corp. v. N.M. Pub. Regulation Comm'n*, Nos. 33,025/33,054**

**ADMINISTRATIVE LAW AND PROCEDURE**

Arbitrary and Capricious Actions
Standard of Review
Sufficiency of Evidence

**APPEAL AND ERROR**
Standard of Review
Substantial or Sufficient Evidence

**CIVIL PROCEDURE**
Mootness

**CONSTITUTIONAL LAW**
Mootness

**CORPORATIONS**
Public Regulatory Commission

**GOVERNMENT**
Motor Carriers