The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:** _____

**Filing Date: February 9, 2022**

**NO. S-1-SC-37320**

**RESOLUTE WIND 1 LLC,**

  Appellant,

v.

**NEW MEXICO PUBLIC
REGULATION COMMISSION,**

  Appellee,

and

**LEA COUNTY ELECTRIC COOPERATIVE, INC., and
WESTERN FARMERS ELECTRIC COOPERATIVE, INC.,**

  Intervenors-Appellees.

**In the Matter of the Formal
Complaint of Resolute Wind 1
Against Lea County Electric
Cooperative, Inc. Case No. 18-00211-UT**

**APPEAL FROM THE NEW MEXICO PUBLIC REGULATION COMMISSION**

Jason Marks Law, LLC
Jason A. Marks
Albuquerque, NM

for Appellant

Judith Ellen Amer
Associate General Counsel
Santa Fe, NM

for Appellee

Newell Law Firm, LLC
Michael T. Newell
Lovington, NM

for Intervenor-Appellee Lea County Electric Cooperative, Inc.

The Law Office of Jamison Barkley, LLC
Jamison Barkley
Santa Fe, NM

for Intervenor-Appellee Western Farmers Electric Cooperative, Inc.

Charles F. Noble
Santa Fe, NM

for Amicus Curiae Coalition for Clean Affordable Energy

Earthjustice
Sara Gersen
Los Angeles, CA

Robin L. Cooley
Denver, CO

David C. Bender
Madison, WI

for Amici Curiae Vote Solar, Sierra Club, Coalition for Clean Affordable Energy

Virtue & Najjar, PC
Daniel A. Najjar
Carla Rossana Najjar
Santa Fe, NM

for Amicus Curiae New Mexico Rural Electric Cooperative Association

# OPINION

**VIGIL, Chief Justice.**

{1}     This appeal turns on a familiar and straightforward legal principle: contested proceedings—whether judicial or, as in this case, administrative—are not susceptible to summary disposition in the face of disputed issues of material fact. The New Mexico Public Regulation Commission (the Commission) ignored this blackletter principle when it summarily dismissed the complaint brought by Resolute Wind 1 LLC (Resolute Wind). The Commission's summary dismissal violated the procedural due process rights of Resolute Wind and was at a minimum arbitrary, capricious, or an abuse of discretion.

{2}     The Commission also erred in relying on a federal agency's determination in an earlier, unrelated matter to dismiss the complaint.

{3}     The Commission's procedural and substantive missteps, whether considered separately or together, require us to annul and vacate the final order appealed from and remand the matter to the Commission for further proceedings so as to afford all parties an opportunity to present evidence in support of their respective positions. In view of this result, and as Resolute Wind readily acknowledges, it is not necessary to address the merits of the federal compliance issue Resolute Wind also raises on

appeal. Nor, by extension, is it necessary to consider any jurisdictional implications that the compliance issue might create.

## I.     BACKGROUND

{4}     The outcome of the underlying administrative proceeding ultimately may turn on the proper interpretation and application of various federal and New Mexico statutes and regulations, all highly technical in nature. Because our determination of the distinct and narrow issues outlined above is sufficient to dispose of the present appeal, a full description of the statutory and regulatory frameworks is unnecessary. Instead, we offer a glimpse of the basic aspects of those provisions that govern the dispositive issues and briefly summarize the factual and procedural backdrop of the case to give context to the Commission's rulings.

## A.     Relevant Statutory and Regulatory Frameworks

{5}     This case arises under the Public Utility Regulatory Policies Act of 1978 (PURPA), Pub. L. No. 95-617, 92 Stat. 3117 (codified as amended at 16 U.S.C. §§ 2601-2645). PURPA was designed "to encourage the development of cogeneration and small power production facilities" in order to diversify the nation's energy sources and thereby "reduce the demand for traditional fossil fuels." *Fed. Energy Regul. Comm'n v. Mississippi*, 456 U.S. 742, 750-51 (1982). "Cogeneration facilities capture otherwise-wasted heat and turn it into thermal energy; small power-

production facilities produce energy (fewer than 80 megawatts) primarily by using 'biomass, waste, renewable resources, geothermal resources, or any combination thereof.'" *Portland Gen. Elec. Co. v. Fed. Energy Regul. Comm'n*, 854 F.3d 692, 695 (D.C. Cir. 2017) (quoting 16 U.S.C. § 796(17)). PURPA designates both cogeneration and small power facilities as "'qualifying facilities,'" and "[S]ection 210(a) of PURPA direct[s] the Federal Energy Regulatory Commission ('FERC') to promulgate rules mandating that electric utilities purchase energy from [qualifying facilities]." *Allco Renewable Energy, Ltd. v. Mass. Elec. Co.*, 875 F.3d 64, 67 (1st Cir. 2017). Those FERC regulations are codified at 18 C.F.R. §§ 292.101-292.602 (2018)[1]. Under 18 C.F.R. § 292.303(a), an electric utility is required to purchase "any energy and capacity which is made available from a qualifying facility." We refer to this as the *mandatory purchase obligation*.

{6} The mandatory purchase obligation is not absolute. Two exceptions are applicable in this case. First, an electric utility may transfer its mandatory purchase obligation to another electric utility which serves as the transferring utility's *full- or all-requirements supplier*. *See* 18 C.F.R. § 292.303(d). However, for such a transfer to be effective, the qualifying facility must consent. *See id.* (requiring that the

---

[1]Although the Code of Federal Regulations is updated annually, this opinion cites the version of the regulations in effect at the time of the order at issue.

3

"qualifying facility agrees"); Small Power Production and Cogeneration Facilities; Regulations Implementing Section 210 of [PURPA], 45 Fed. Reg. 12,214, 12,235 (Feb. 25, 1980) (stating that such "an all-requirements" transfer is permissible "if the qualifying facility consents"). Second, an electric utility may apply to FERC for a waiver of the mandatory purchase requirement. *See* 18 C.F.R. § 292.402(a). However, the utility must provide public notice that it is seeking the waiver. *Id.*

{7}    On the state level, the Commission has promulgated and adopted a counterpart transfer regulation giving a "distribution cooperative having a full power requirements contract with its supplier . . . the option of transferring the purchase obligation . . . to its power supplier." 17.9.570.13(F)(1) NMAC (Rule 570). Unlike the FERC transfer provision set out in 18 C.F.R. § 292.303(d), the Commission's rule does not by its terms require a qualifying facility's consent to transfer the purchase obligation. *See* Rule 570.

{8}    PURPA requires the rate at which the utility purchases a qualifying facility's power to "be just and reasonable to the [customers] of the electric utility" and bars FERC from prescribing a rate that "exceeds the incremental cost to the electric utility of alternative electric energy." 16 U.S.C. § 824a-3(b). PURPA defines the term *incremental cost of alternative electric energy* as "the cost to the electric utility of the electric energy which, but for the purchase from [the] small power producer,

4

such utility would generate or purchase from another source." Section 824a-3(d). In adopting its rules to implement PURPA, FERC substituted the term "avoided costs" for the term "incremental cost" that Congress chose. *See Sierra Club v. Pub. Serv. Comm'n of W. Va.*, 827 S.E.2d 224, 228 (W. Va. 2019) (internal quotation marks omitted) (recognizing that costs "incremental" and "avoided" are synonymous (internal quotation marks omitted)). Stated simply, a utility's avoided cost "is the cost [the] utility would otherwise incur in obtaining the same quantity of electricity from a different source." *In re Investigation to Review the Avoided Costs That Serve as Prices for the Standard-Offer Program in 2020*, 2021 VT 28, ¶ 5, 254 A.3d 178.

**B.      Factual Background and Commission Proceedings**

{9}      Intervenor-Appellee Western Farmers Electric Cooperative, Inc. (Western Farmers Electric) "is a cooperative association engaged in the wholesale generation[,] . . . transmission[,] and distribution of electric power to its member rural electric cooperatives[,] which then provide retail electric service to the public." Intervenor-Appellee Lea County Electric Cooperative, Inc. (Lea County Electric) "is a rural electric cooperative organized pursuant to the New Mexico Rural Electric Cooperative Act," NMSA 1978, §§ 62-15-1 to -37 (1939, as amended through 2021), which provides energy to retail customers in Southeastern New Mexico and West Texas. Lea County Electric does not have electrical generation sources of its own

and must obtain its electrical power and energy from another source, such as Western Farmers Electric.

{10} The case commenced with Resolute Wind filing a petition for declaratory order and a supporting brief with the Commission. The petition was supported by an affidavit attesting to the facts alleged. Resolute Wind contended it is a "qualifying facility" under PURPA and asked the Commission to enter its order, "after notice and hearing," (1) declaring that Lea County Electric is obligated under PURPA to purchase the energy and capacity that Resolute Wind produces and (2) determining the proper avoided costs Lea County Electric is required to pay Resolute Wind for its energy and capacity.

{11} Resolute Wind alleged that it purchased "a two megawatt (2MW) wind turbine located in Gaines County, Texas, within 400 feet of the border with Lea County," New Mexico, which has been certified as a "qualifying facility" by FERC. Resolute Wind contended that Lea County Electric is obligated under PURPA to purchase the energy and capacity that Resolute Wind produces, asserting that the wind turbine is within Lea County Electric's service territory and is interconnected to Lea County Electric's service system.

{12} The dispute arose, according to the petition, when Resolute Wind asked Lea County Electric to fulfill the mandatory PURPA purchase obligation and Lea County

6

Electric asserted it had transferred its mandatory PURPA purchase obligation to Western Farmers Electric, one of Lea County Electric's wholesale suppliers. Resolute Wind contended as follows: (1) Federal regulations allowed Lea County Electric to transfer its purchase obligation, but only with Resolute Wind's consent, and Resolute Wind had not consented to any transfer. (2) FERC had not granted Lea County Electric a waiver of its purchase obligation. (3) While Rule 570 purports to allow a transfer of Lea County Electric's purchase obligation if Lea County Electric had a "full-requirements contract" with a supplier, Lea County Electric did not have a "full-requirements contract" with Western Farmers Electric or any other supplier. (4) Even if Lea County Electric had a "'full power requirements contract'" with a supplier, it could not transfer the purchase obligation pursuant to Rule 570 because Rule 570 conflicts with the federal requirements of 18 C.F.R. § 292.303, which gives the *qualifying facility* (Resolute Wind) the right to approve a transfer, while Rule 570 gives the option to the *utility* (Lea County Electric), and because federal law preempts Rule 570. (5) The parties disputed whether the avoided cost of either Lea County Electric or Western Farmers Electric applied and the method for calculating the avoided cost.

{13} The Commission determined that it would process the Resolute Wind filing "as a complaint, subject to the formal complaint process set forth in [its] Rules of

7

Procedure 1.2.2.13 and 1.2.2.15 [NMAC]" and not as a petition for a declaratory order.

{14}   Lea County Electric and Western Farmers Electric (collectively, the Utilities) filed a joint answer. They contended the Commission should dismiss the complaint because "the [c]omplaint failed to provide probable cause for the Commission to pursue the [c]omplaint." In support of this contention, the Utilities denied that Lea County Electric is obligated by PURPA to purchase the energy and capacity that Resolute Wind produces because, they asserted, the obligation was transferred to Lea County Electric's "all-requirements provider" Western Farmers Electric. In response to Resolute Wind's specific contentions, the Utilities (1) denied that Lea County Electric could not transfer its PURPA obligation without Resolute Wind's consent, (2) agreed that FERC had not granted Lea County Electric a waiver of the purchase obligation, (3) affirmatively alleged that Lea County Electric has a full-requirements contract with Western Farmers Electric, (4) denied that PURPA preempts Rule 570, and (5) agreed that the parties dispute whether the avoided cost

of either Lea County Electric or Western Farmers Electric applies and the method for calculating the avoided cost.[2]

{15}    On its own initiative and without any input from the parties, the Commission ordered the Utilities to file "a sworn affidavit with supporting documents that testify to and prove" the answer's assertions that Lea County Electric "has a 'full requirements' contract with Western Farmers Electric" and that "Resolute [Wind] is required to negotiate a [purchase power agreement] with [Western Farmers Electric]." Resolute Wind moved for rehearing, strongly objecting to the agency's adoption of a procedure that allowed its opposing parties the opportunity, in effect, to augment their answer by submitting additional or stronger factual support "as dispositive" of the proceeding and asserting that "under the circumstances" and "at

---

[2]As stated at the outset of this opinion, and as Resolute Wind candidly concedes, the federal compliance issue created by the absence of an express consent requirement from Rule 570 need not be resolved in this appeal. The issue takes on relevance if, and only if, it is ultimately determined on remand that a full-requirements contractual supply relationship exists between the Utilities. It necessarily follows that the nuanced question as to whether this Court has jurisdiction to decide the federal compliance issue need not now be addressed either. *Cf. In re Investigation to Review the Avoided Costs That Serve as Prices for the Standard-Offer Program in 2020*, 2021 VT 28, ¶¶ 25-30, 254 A.3d 178 (discussing the distinct jurisdictional paths pertinent to "'as-applied' challenges to a state regulatory agency's application of PURPA-compliant regulations to an individual petitioner"—a state court path—and pertinent to "a broad facial challenge to [state] regulations themselves" as PURPA noncompliant—a federal court path.

a minimum" it was "entitled to pursue discovery" on any new facts presented by the Utilities so as to avoid "hav[ing] the matter prejudged by the Commission."

{16} Consistent with the Commission's order inviting the Utilities to "testify to and prove" their defense of the case on paper, the Utilities filed two affidavits—one submitted by an officer of Lea County Electric and the other submitted by an officer of Western Farmers Electric. The affidavits, each confined to two pages and in virtually identical form, attested to the status of Lea County Electric as a full-requirements member of Western Farmers Electric. To support that contention, the affidavits relied heavily on various contractual agreements entered into by the Utilities—among the earliest documents being a Transition Agreement dated March 24, 2010 that called for the phased transition of Lea County Electric to full-requirements status by May 31, 2026. With little elaboration, the affiants averred in lockstep that the Utilities by their actions accelerated the transition period well ahead of the stated May 2026 contractual deadline and that the status of Lea County Electric as a full-requirements member of Western Farmers Electric actually came to fruition no later than May 2014.

{17} Following receipt of the affidavits of the Utilities and without soliciting a response from Resolute Wind, the Commission issued its final order, which dismissed the complaint with prejudice. The Commission's summary disposition

was based on a finding that the affidavits and supporting documentation submitted at the Commission's own request constituted substantial evidence that Lea County Electric is a full-requirements member of Western Farmers Electric and that the power purchase contract entered into by the Utilities on March 24, 2010, carried with it an existing and enforceable full-requirements obligation on the part of Lea County Electric to purchase all of its electric power from Western Farmers Electric.

{18}    In addition, in its final order, the Commission relied on a FERC ruling dating back to June 2006 that granted Western Farmers Electric and its then eighteen-member full-requirements electric distribution cooperatives a waiver of their respective obligations to sell electric power to and purchase electric power from qualifying facilities. Lea County Electric was, conspicuously, not included in this group of cooperatives. *See Western Farmers Elec. Coop.*, 115 FERC ¶ 61,323, at 62,149 & n.1, 62,150 (2006) (order).

{19}    Thus, and despite the undeveloped nature of the factual record, the Commission determined that Western Farmers Electric owes the mandatory PURPA purchase obligation to Resolute Wind at the avoided cost of Western Farmers Electric and not at the avoided cost of Lea County Electric. The Commission concluded that the Resolute Wind complaint "lacks probable cause" and dismissed the complaint with prejudice. Resolute Wind appeals, and as explained next, we

annul and vacate the Commission's final order and remand the case to the Commission for further proceedings.

## II. DISCUSSION

### A. Standard of Review

{20} Resolute Wind, as the party appealing from the Commission's final order, has the burden "to show that the order appealed from is unreasonable, or unlawful." NMSA 1978, § 62-11-4 (1965). "[T]he appropriate inquiry in determining whether an order of the [C]ommission is unreasonable or unlawful is whether the [C]ommission's decision was arbitrary and capricious, unsupported by substantial evidence, or an abuse of the agency's discretion." *Att'y Gen. of N.M. v. N.M. Pub. Util. Comm'n*, 2000-NMSC-008, ¶ 3, 128 N.M. 747, 998 P.2d 1198. As to questions of fact, "we view the evidence in the light most favorable to the [Commission's] decision, [but] we will uphold the decision only if it is supported by substantial evidence." *Albuquerque Bernalillo Cnty. Water Util. Auth. v. N.M. Pub. Regul. Comm'n (ABCWUA)*, 2010-NMSC-013, ¶ 18, 148 N.M. 21, 229 P.3d 494.

### B. The Erroneous Procedure Followed by the Commission in Summarily Resolving the Disputed Full-Requirements Issue

{21} As outlined above, the Commission improperly adopted its own methodology for summarily resolving a hotly contested factual issue: whether Western Farmers

12

Electric is a full-requirements provider of all the power needs of Lea County Electric. The summary fact-finding approach fashioned by the Commission—giving controlling weight to the follow-up affidavits submitted by the Utilities at the Commission's own directive, while implicitly rejecting the competing allegations set out in the verified complaint—represents a clear departure from evidence-weighing principles traditionally applied in contested administrative proceedings. *See* 1 Kristin E. Hickman & Richard J. Pierce, Jr., *Administrative Law Treatise*, § 6.2.3, at 693 (6th ed. 2019) (recognizing that an administrative hearing is required "to resolve a contested issue of adjudicative fact—as opposed to an issue of policy or of legislative fact—[at least] when credibility is an issue"); Ernest Gellhorn & William F. Robinson, Jr., *Summary Judgment in Administrative Adjudication*, 84 Harv. L. Rev. 612, 630-31 (1971) (endorsing the use of summary judgment in administrative proceedings, at least when "evidentiary facts are undisputed [and] a hearing serves no purpose"). And, more specifically, the Commission's summary resolution of the full-requirements issue appears out of step with FERC rulings that signal the need for a hearing when disputed issues arise in the context of this type of inquiry. *See, e.g.*, *W. Tex. Utils. Co.*, 25 FERC ¶ 61,114, at 61,345-46, 61,348 (1983) (ordering a public hearing on the "justness and reasonableness" of a utility's rates and proposed definitional changes that raised "significant issues" relating to "full

13

requirements customers whose loads are partially supplied by cogenerators or small power producers"); *Wis. Pub. Serv. Corp.*, 24 FERC ¶ 61,304, at 61,656 (1983) (ordering a public hearing on, among other issues, "the rates, terms, and conditions of [a utility's] full requirements service").

**{22}** In practical terms, the procedure followed by the Commission gave the Utilities the last and decisive word on the all-important factual issue concerning the full-requirements relationship—or lack thereof—between the Utilities.

**{23}** In evaluating the Commission's action, we are mindful of the deference generally accorded both a public utility agency's management of its own proceedings, *see Tri-State Generation & Transmission Ass'n v. N.M. Pub. Regul. Comm'n*, 2015-NMSC-013, ¶ 24, 347 P.3d 274, and the agency's treatment of procedural matters, *see City of Gillette v. FERC*, 737 F.2d 883, 884-85 (10th Cir. 1984). However, we also subscribe to the view that "when [procedural] matters fall outside the norm, experience teaches us to exercise a healthy dose of caution and circumspection." *ABCWUA*, 2010-NMSC-013, ¶ 99 (Bosson, J., dissenting). Considering the unconventional fact-finding course followed by the Commission in this case, the need for judicial "caution and circumspection" on appeal is imperative. *See id.*

{24}   With appropriate caution in mind, we cannot say that the problems created by the summary fact-finding procedure employed by the Commission—allowing no means for Resolute Wind to counter the follow-up affidavits from the Utilities—are trifling matters; to the contrary, the problems reach constitutional proportions. The procedural path taken by the Commission plainly violated an essential element of the procedural due process rights of Resolute Wind: the opportunity to be heard. *See TW Telecom of N.M., L.L.C. v. N.M. Pub. Regul. Comm'n*, 2011-NMSC-029, ¶ 17, 150 N.M. 12, 256 P.3d 24 (recognizing that "the fundamental requirements of due process in an administrative context are reasonable notice and *opportunity to be heard and present any claim or defense*" (internal quotation marks and citation omitted)). Despite the law's command that an opportunity to be heard in an administrative matter be granted "at a meaningful time and in a meaningful manner," *id.* (internal quotation marks and citation omitted), the due process rights of Resolute Wind were violated when it was precluded altogether from presenting evidence and developing a record on the disputed full-requirements issue. *See id.* ¶¶ 1, 20-21 (concluding that the Commission's denial of "the opportunity to present evidence and to examine and cross-examine witnesses" or to otherwise "ma[ke] a record" constituted a violation of the appellant's due process rights).

{25}   This is not a situation where an administrative agency sets an expedited, but

15

ultimately manageable, procedural schedule limiting discovery. *See ABCWUA*, 2010-NMSC-013, ¶¶ 27, 31 (rejecting a procedural due process challenge to an expedited procedural schedule imposed by the Commission, where the agency twice "extend[ed] the time period in which [appellants] were required to file their responsive testimony"). Instead, it is a situation where a party is denied outright any and all opportunities to conduct discovery or otherwise develop the record on a disputed factual issue. And because the procedural prohibitions imposed by the Commission against Resolute Wind were absolute, not relative, the inherently flexible nature of due process does not assist the Commission here. *Cf. ABCWUA*, 2010-NMSC-013, ¶ 28 (noting as a general proposition that "due process is flexible in nature and may adhere to such requisite procedural protections as the particular situation demands" (internal quotation marks and citation omitted)).

{26} Analyzed from a different perspective, the peremptory fact-finding process imposed by the Commission was—at a minimum—arbitrary, capricious, or an abuse of discretion. The Commission's action constituted an abuse of discretion because, among other infirmities, it was "not in accord with legal procedure," *see Bernalillo Cnty. Health Care Corp. v. N.M. Pub. Regul. Comm'n*, 2014-NMSC-008, ¶ 9, 319 P.3d 1284 (internal quotation marks and citation omitted), and it was arbitrary and capricious because it lacked a rational basis and was not the product of reasoned

decision-making. *See N.M. Att'y Gen. v. N.M. Pub. Regul. Comm'n*, 2013-NMSC-042, ¶ 10, 309 P.3d 89 (stating that an agency decision "is arbitrary and capricious if it is unreasonable or without a rational basis, when viewed in light of the whole record"); *see also Pub. Serv. Comm'n of N.Y. v. FERC*, 813 F.2d 448, 451 (D.C. Cir. 1987) (defining reasoned decision-making in the utility ratemaking context as "a process demonstrating the connection between the facts found and the choice made"). Nor can it be said that the Commission's decision was supported by substantial evidence, which, in the context of this appeal, "is evidence that a reasonable mind would regard as adequate to support a conclusion." *Doña Ana Mut. Domestic Water Consumers Ass'n v. N.M. Pub. Regul. Comm'n*, 2006-NMSC-032, ¶ 11, 140 N.M. 6, 139 P.3d 166 (internal quotation marks and citation omitted).

{27}    In the final analysis, the Commission's one-sided procedural approach failed to comport with traditional notions of fairness, mandating that we vacate and annul the final order under review here. *See* NMSA 1978, § 62-11-5 (1982) (authorizing this Court to "either affirm or annul and vacate" a Commission order but not to modify it).

{28}    Having concluded that the Commission's adjudication of the full-requirements issue was fundamentally flawed from a procedural perspective, we need not and do not address the substantive aspects of the Commission's full-

17

requirements ruling. To be clear, in remanding the matter for further proceedings, we express no view on the merits of the full-requirements arguments of Resolute Wind or responses to them from the Utilities.

## C.     The Commission's Invocation of FERC Waiver Principles

{29}     In dismissing the complaint, the Commission's apparent reliance on waiver principles was also arbitrary, capricious, or an abuse of discretion, thus providing an independent basis on which to annul and vacate the agency's final order.

{30}     The Utilities readily acknowledged in their joint answer to the complaint of Resolute Wind that neither has availed itself of the opportunity to apply for a FERC waiver of any qualifying facility purchase or sale obligation in connection with the energy produced by the Resolute Wind turbine facility. Because FERC has not yet passed judgment on the waiver issue, the Utilities may not assert any entitlement to the benefits of a formal, favorable FERC waiver determination. *See Indep. Energy Producers Ass'n, Inc. v. Cal. Pub. Utils. Comm'n*, 36 F.3d 848, 853-54 (9th Cir. 1994) (recognizing that FERC regulations under PURPA carry out congressional intent that FERC "exercise exclusive authority over [qualifying facility] status determinations," including determinations involving the waiver of compliance with qualifying facility standards, and the regulations nowhere "contemplate a role for the state in setting [qualifying facility] standards or determining [qualifying facility]

18

status").

{31}    But even if the Commission had a role to play in this arena, nothing in its analysis supports, much less compels, a dismissal of the complaint. This conclusion certainly applies to the Commission's heavy but seemingly misplaced reliance on the previously mentioned 2006 FERC order granting Western Farmers Electric and some of its then member cooperatives a waiver of their respective sales and purchase obligations under PURPA. *See Western Farmers Elec. Coop.*, 115 FERC ¶ 61,323. The dismissal can be taken—as counsel for Resolute Wind puts it—as the "conjuring of a FERC waiver order from thin air." Granted, the decision issued in the cited case appears to reflect the willingness of FERC, in appropriate circumstances, to view favorably the "requests for waiver submitted by generation and transmission cooperatives (G&Ts) seeking waiver of the G&T's sale obligations and waiver of the member distribution cooperatives' purchase obligations." *Id.* at 62,152. But the FERC decision also made clear that the grant of a G&T waiver request is not available just for the asking and instead hinges on a particularized showing that adherence to the mandatory PURPA purchase and sales obligations is "not necessary to encourage cogeneration and small power production" in a particular situation or service area. *Id.* at 62,150, 62,152; *see* 18 C.F.R. § 292.402(b). Indeed, the FERC decision in that case was quick to point out that it had denied, within the preceding

three-year period, a waiver request from another G&T located in a different service area when presented with different circumstances. *Western Farmers Elec. Coop.*, 115 FERC ¶ 61,323, at 62,152 & n.9. Thus, the FERC approach therein seems consistent with the type of individualized, case-specific treatment of qualifying facility waiver requests that forms a common thread throughout the relevant case law. *See, e.g.*, *City of Fremont v. FERC*, 336 F.3d 910, 918 (9th Cir. 2003) (recognizing that FERC waiver decisions are "necessarily exercises of discretion in light of the facts and equities in the particular cases"); *Greensboro Lumber Co. v. FERC*, 825 F.2d 518, 523 (D.C. Cir. 1987) (noting that FERC waiver analyses require "case-by-case determinations" that are "carefully crafted to fit particular circumstances").

{32} For the reasons set forth herein, the Commission acted unreasonably or unlawfully to the extent that it relied on favorable treatment by FERC of the 2006 waiver application of Western Farmers Electric as a basis on which to dismiss the complaint.

## III. CONCLUSION

{33} Based on the foregoing, we annul and vacate the final order appealed from and remand this case to the Commission for further proceedings in accordance with this opinion.

**IT IS SO ORDERED.**

                                      _____

                                      **MICHAEL E. VIGIL, Chief Justice**

**WE CONCUR:**

_____

**C. SHANNON BACON, Justice**

_____

**DAVID K. THOMSON, Justice**