This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-40725

**YADIVA L. HOLGUIN,**

Worker-Appellant,

v.

**TOWN RECYCLING, LLC and
NEW MEXICO SAFETY CASUALTY
COMPANY,**

Employer/Insurer-Appellees.

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION
Rachel A. Bayless, Workers' Compensation Judge**

Narciso Garcia, Jr., LLC
Narciso Garcia, Jr.
Albuquerque, NM

for Appellant

YLAW, P.C.
Ryan F. Adragna
Megan L. Kuhlmann
Albuquerque, NM

for Appellees

## MEMORANDUM OPINION

**BACA, Judge.**

**{1}** Yadiva Holguin (Worker), a former employee of Town Recycling, LLC (Employer), appeals the compensation order entered by the Workers' Compensation Judge (WCJ) adjudging Worker's claim not compensable and dismissing her complaint with prejudice. The issues Worker raises on appeal are: (1) whether the WCJ

improperly applied the requirements of NMSA 1978, Section 52-1-28 (1987), in finding that Worker failed to meet her burden on causation; and (2) whether the WCJ erred in finding that Worker failed to establish a disability.[1] For the reasons that follow, we affirm.

**DISCUSSION**[2]

**I.     Substantial Evidence Supports the WCJ's Finding That Worker Did Not Establish Causation as Required by Section 52-1-28**

**A.     Standard of Review**

**{2}**     On appeal from a WCJ's compensation order, "we review the whole record to determine whether the WCJ's findings and award are supported by substantial evidence." *Molinar v. Larry Reetz Constr., Ltd.*, 2018-NMCA-011, ¶ 20, 409 P.3d 956 (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole is evidence demonstrating the reasonableness of an agency's decision, and we neither reweigh the evidence nor replace the fact[-]finder's conclusions with our own." *Dewitt v. Rent-A-Ctr., Inc.*, 2009-NMSC-032, ¶ 12, 146 N.M. 453, 212 P.3d 341 (citation omitted). Therefore, while we "may not view favorable evidence with total disregard to contravening evidence," *id.* (internal quotation marks and citation omitted), "[w]e view the evidence in the light most favorable to the [WCJ's] decision," *id.*, and "we will not disturb the WCJ's findings unless they are manifestly wrong or clearly opposed to the evidence." *Maez v. Riley Indus.*, 2015-NMCA-049, ¶ 10, 347 P.3d 732. Finally, "[w]e review the interpretation of a statute" and "the WCJ's application of the law to the facts de novo." *Molinar*, 2018-NMCA-011, ¶¶ 19-20.

**B.     Substantial Evidence Supports the WCJ's Finding That Worker's Sole Medical Expert Witness Lacked an Adequate Foundation to Testify as to Causation**

---

[1] Worker raised a third issue in this appeal: whether the WCJ erred in finding that Worker did not request medical treatment for her work-related injury. We summarily dispose of this issue as follows. To the extent that we understand Worker's argument, we construe it to challenge the issue of the initial selection of a health care provider. In the compensation order, the WCJ concluded "Worker's claim is not compensable as a consequence of Worker's failure to meet her burden of proof under . . . [Section] 52-1-28," and that the issue of the initial selection of healthcare provider is therefore "moot and not addressed." As a result, we need not address the issue further. *See Eskew v. Nat'l Farmers Union Ins. Co.*, 2000-NMCA-093, ¶ 20, 129 N.M. 667, 11 P.3d 1229 ("[W]e are unwilling to pronounce on an issue not decided by the [WCJ].");*see also Bernalillo Cnty. Health Care Corp. v. N.M. Pub. Regul. Comm'n*, 2014-NMSC-008, ¶ 13, 319 P.3d 1284 ("[Appellate courts do] not address moot issues that will have no practical impact on the parties before [them].").

[2] Because this is an unpublished memorandum opinion written solely for the benefit of the parties, see *State v. Gonzales*, 1990-NMCA-040, ¶ 48, 110 N.M. 218, 794 P.2d 361, and the parties are familiar with the factual and procedural background of this case, we omit a background section and leave the discussion of the facts for our analysis of the issues.

**{3}**      Worker first argues that she established causation under Section 52-1-28 through the testimony of Dr. Emma Goodstein, her health care provider (HCP). Section 52-1-28(A) provides:

> Claims for workers' compensation shall be allowed only: (1) when the worker has sustained an accidental injury arising out of and in the course of [their] employment; (2) when the accident was reasonably incident to [their] employment; and (3) when the disability is a natural and direct result of the accident.

Moreover, under Section 52-1-28(B),

> [i]n all cases where the employer or [their] insurance carrier deny that an alleged disability is a natural and direct result of the accident, the worker must establish that causal connection as a probability by expert testimony of a health care provider, as defined in [NMSA 1978,] Section 52-4-1 [(2007)], testifying within the area of [their] expertise.

**{4}**      Here, Employer denied that Worker's alleged disability was a natural and direct result of the accident. Therefore, Worker was required to establish through expert medical testimony of an HCP that "(1) a work-related accident caused an injury . . . and (2) the injury resulted in disability." *Molinar*, 2018-NMCA-011, ¶ 21; *see* § 52-1-28(B). Worker attempted to do so through the testimony of Dr. Goodstein.

**{5}**      In this case, the WCJ made the following relevant, substantially supported findings: (1) "Worker's . . . [c]ompensation [c]omplaint . . . alleges Worker suffered injury to her left arm and shoulder on February 10, 2021[,] when Worker's left arm was caught in machinery as she was separating trash from recycle"; (2) "On July 9, 2021, Worker had a 'phone acute visit' appointment with Dr. . . . Goodstein at La Familia. Dr. Goodstein testified the phone appointment lasted no more than ten minutes"; (3) "Dr. Goodstein documented Worker reported having pain 'and pulsing' in her arm at night and that her left arm would pop during physical therapy. Worker complained her pain had been 'worse the past three days'"; (4) "[p]rior to her July 9, 2021[,] 'phone acute visit' with Dr. Goodstein, Worker had not complained of popping sensations in the shoulder, nor had her therapist at Christus St. Vincent documented such complaints"; (5) "[p]rior to her July 9, 2021[,] phone visit with Dr. Goodstein, Worker had not complained of a pulsing sensation in the shoulder, nor had any medical provider documented such complaints"; (6) "Dr. Goodstein was the only authorized health care [provider] deposed"; (7) "Dr. Goodstein never physically examined Worker prior to her deposition"; (8) "Dr. Goodstein testified Worker's chart did not include notes of any physical therapy Worker received"; (9) "[i]n forming her opinions regarding causation, Dr. Goodstein relied on Worker's history that she lifted either heavy cartons or lifted something heavy at work and that her left shoulder problems started after that incident"; (10) "[u]ntil her deposition, Dr. Goodstein was unaware the work accident did not involve lifting"; (11) as to Worker's July 9, 2021, phone visit, Dr. Goodstein testified that her diagnosis of left shoulder pain was "based on the information that is in the record" and "I

have not personally examined her—or I've only spoken to her once"; (12) "Worker testified physical therapy at Christus St. Vincent helped decrease her pain for a time. At trial, when asked if she attended physical therapy at another location, Worker answered: 'the pain diminished, and then a little while later while doing heavy work at the house, it came back'"; (13) "Worker testified the heavy work she was doing at home involved cleaning up leaves and lifting the garbage bag into a container. In the moment of lifting the bag, Worker testified she felt immediate pain. Later in the evening, Worker testified her arm was swollen"; (14) "[w]hen forming her opinions, Dr. Goodstein did not have the benefit of Worker's testimony as an explanation for Worker's shoulder complaints discussed at the July 9, 2021[,] phone visit"; (15) "[w]hen forming her opinions, Dr. Goodstein was not aware Worker returned to work on February 15 and worked her regular, full shift without accommodations and thereafter worked the same shift for three days before her termination"; (16) "[b]ecause she did not have copies of records of Worker's therapy at Christus St. Vincent and All Care, Dr. Goodstein was not aware the 'pulsing' and 'popping' sensations Worker reported during the July 9, 2021 phone visit were new complaints"; (17) "Dr. Goodstein specifically testified she could not opine on work restrictions without examining Worker"; (18) "Dr. Goodstein lacked a sufficient foundation upon which she could form an opinion"; and (19) "Worker failed to present testimony from an authorized health care provider testifying to a reasonable degree of medical probability sufficient to satisfy the requirements of . . . [Section] 52-1-28."

**{6}**    The WCJ concluded that "Dr. Goodstein . . . lacked sufficient foundation upon which to render causation opinions for Worker's left shoulder pain" and "Worker's claim is not compensable as a consequence of Worker's failure to meet her burden of proof under . . . [Section] 52-1-28." For the following reasons the WCJ's conclusions are reasonable in light of the substantially supported findings we listed above.

## C.    Based on These Findings, Dr. Goodstein Lacked Sufficient Foundation to Testify to Causation

**{7}**    We turn now to address Worker's arguments as to why the WCJ erred in concluding that Dr. Goodstein lacked sufficient foundation upon which to render causation opinions for Worker's left shoulder pain. Worker makes two specific challenges to the WCJ's findings, neither of which persuades us that the WCJ's findings are unsupported or its decision unreasonable.

**{8}**    First, Worker specifically challenges as unsupported the WCJ's finding that "[i]n forming her opinion regarding Worker's diagnosis and causal connection to a work accident, Dr. Goodstein only had access to Worker's chart at La Familia, the February 2022 left shoulder MRI, and the subjective history given by Worker during the phone appointment on July 9, 2021." Worker points out that "Dr. Goodstein, at page 20 of her deposition, was also presented with page 17 through page 26 of Worker's deposition testimony where Worker described how she was injured." We note at the outset that even if we were to agree that the challenged finding is unsupported, the remaining findings provide a sufficient foundation for the WJC's conclusion. *See Dewitt*, 2009-

NMSC-032, ¶ 12 ("Substantial evidence on the record as a whole is evidence demonstrating the reasonableness of an agency's decision."). A review of the WCJ's order reveals, however, that Worker's challenge to the finding is misplaced. The WCJ made these additional findings, which Worker does not challenge: (1) "Dr. Goodstein was asked to review *Worker's deposition* wherein Worker described the work accident. *After reviewing Worker's deposition testimony*, Dr. Goodstein wouldn't comment on whether Worker's testimony was consistent with history given to providers at La Familia, testifying only that 'she told us she was lifting heavy things'"; (2) "[a]fter reviewing *Worker's deposition testimony* and considering available records and the MRI findings, Worker's counsel asked Dr. Goodstein whether her impression had changed"; and (3) Dr. Goodstein, during her deposition, was asked the following question: "based upon what you've seen; the medical records, [*Worker's*] *deposition testimony*, the report of injury, do you have an opinion as to whether this condition was caused by the work accident [Worker] described?"

**{9}**     Reading the language of the challenged finding together with those findings just described, it becomes clear that the "opinion" referenced in the challenged finding refers to Dr. Goodstein's diagnosis of Worker's injury *prior to* review of Worker's deposition testimony. *See Molinar*, 2018-NMCA-011, ¶ 20 ("[W]e review the whole record to determine whether the WCJ's findings and award are supported by substantial evidence."). The WCJ chose to address separately Dr. Goodstein's review of page 17 through 26 of Worker's deposition testimony, which was presented to Dr. Goodstein *during* her deposition *after* her initial diagnosis. Therefore, the WCJ's finding that "[i]n forming her opinion regarding Worker's diagnosis and causal connection to a work accident, Dr. Goodstein only had access to Worker's chart at La Familia, the February 2022 left shoulder MRI, and the subjective history given by Worker during the phone appointment on July 9, 2021" is substantially supported. *See Dewitt*, 2009-NMSC-032, ¶ 12 ("We view the evidence in the light most favorable to the [WCJ's] decision."); *Maez*, 2015-NMCA-049, ¶ 10 ("[W]e will not disturb the WCJ's findings unless they are manifestly wrong or clearly opposed to the evidence.").

**{10}**     Second, Worker challenges as improper the WCJ's findings that: (1) "[w]hen forming her opinions, Dr. Goodstein had less foundation than a treating provider with the benefit of having physically examined or observed the patient"; (2) "[w]hen forming her opinions, Dr. Goodstein had less foundation than an IME provider with the benefit of all available medical records and the ability to physically examine and observe the patient"; and (3) "[w]hen forming her opinions, Dr. Goodstein did not have the benefit of witness' testimony."

**{11}**     Worker, citing *State ex rel. Martinez v. Lewis*, asserts that the WCJ "is to find only ultimate facts as opposed to evidentiary facts." *See* 1993-NMCA-063, ¶ 41, 116 N.M. 194, 861 P.2d 235 ("[I]n New Mexico, there is a wealth of law pursuant to [Rule] 1-052(B) (Repl. 1992), which provides that a [district] court is to find only ultimate facts as opposed to evidentiary facts."). Worker submits that "[t]he findings of the [WCJ] in this regard are not findings of ultimate fact and appear to be argumentative in order to support" the finding that "Dr. Goodstein lacked a sufficient foundation upon which she

could form an opinion." Finally, Worker claims that "[t]hese findings have no basis in the evidence presented at trial and appear to be based solely on the [WCJ's] decision making process in other cases."

**{12}**     Worker cites no authority, apart from a general citation to *Martinez* containing  a rule statement, showing that the WCJ's above findings are evidentiary rather than ultimate, that the findings are argumentative, or that argumentative findings are improper in a worker's compensation order. "Where a party cites no authority to support an argument, we may assume no such authority exists." *Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482; *see Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (stating that this Court will not consider undeveloped arguments). Moreover, even accepting arguendo that the WCJ's above three findings are improper, this does not render the WCJ's decision, otherwise robustly supported by substantial evidence, unreasonable. *See Dewitt*, 2009-NMSC-032, ¶ 12 ("Substantial evidence on the record as a whole is evidence demonstrating the reasonableness of an agency's decision.").

**{13}**     Finally, Worker argues that because "Dr. Goodstein clearly opined that the shoulder pain was causally related to the work injury and there was no contradictory evidence," "it was error on the part of the WCJ to reject it on grounds that the doctor lacked sufficient foundation" and "the uncontradicted evidence rule requires reversal of the causation decision." We disagree that the WCJ erred in rejecting Dr. Goodstein's testimony. Our Supreme Court has held that the uncontradicted medical evidence rule requiring acceptance of uncontradicted expert medical testimony does not apply "if the expert who testifies lacks pertinent information." *Banks v. IMC Kalium Carlsbad Potash Co.*, 2003-NMSC-026, ¶ 35, 134 N.M. 421, 77 P.3d 1014. Because here Dr. Goodstein lacked pertinent information, Dr. Goodstein's testimony was not binding on the WCJ.

**{14}**     We conclude that (1) Dr. Goodstein lacked familiarity with Worker; (2) Dr. Goodstein lacked pertinent information; and (3) the WCJ's findings and conclusions on foundation and causation are substantially supported. Because Worker has not established that a work-related accident caused an injury, we need not address Worker's contention that the injury resulted in a disability. *See Molinar*, 2018-NMCA-011, ¶ 21 (stating a worker must establish that "(1) a work-related accident caused an injury . . . *and* (2) the injury resulted in disability." (emphasis added)).

**CONCLUSION**

**{15}**     We affirm.

**{16}     IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**SHAMMARA H. HENDERSON, Judge**

**JANE B. YOHALEM, Judge**